Brenda R. Sharton (*admitted pro hac vice*)
DECHERT LLP
One International Place, 40th Floor
100 Oliver Street
Boston, MA 02110-2605
Telephone:  (617) 728-7100
Facsimile:  (617) 275-8374
brenda.sharton@dechert.com

Benjamin M. Sadun (Bar No. 287533)
DECHERT LLP
US Bank Tower
633 West 5th Street, Suite 4900
Los Angeles, CA 90071-2032
Telephone:  (213) 808-5700
Facsimile:  (213) 808-5760
benjamin.sadun@dechert.com

Theodore E. Yale (*admitted pro hac vice*)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone:  (215) 994-4000
Facsimile:  (215) 655-2455
theodore.yale@dechert.com

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B.W. and JANE DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAN DIEGO FERTILITY CENTER MEDICAL GROUP, INC. AND IVY FERTILITY SERVICES, LLC.,<br><br>Defendants. | Case No.: 3:24-cv-00237-LL-BLM<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Hearing Date:  June 17, 2024<br>Judge:  Hon. Linda Lopez<br><br>Action Filed: February 5, 2024 |

**TO THE HONORABLE COURT, AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD HEREIN:**

**NOTICE IS HEREBY GIVEN** that on June 17, 2024, in Courtroom 5D, 5th Floor of the above-entitled Court located at 221 West Broadway, San Diego, CA 92102, Defendants San Diego Fertility Center Medical Group, Inc. and Ivy Fertility Services, LLC., will and hereby do move the Court to dismiss the above-captioned action pursuant to Federal Rule of Civil Procedure 12(b)(6). This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs fail to state a claim against Defendant upon which relief can be granted.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, all pleadings, papers, and records on file in this Action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion. Defendants met and conferred with Plaintiffs regarding this motion on March 22, 2024.

Dated: May 13, 2024                    _/s/ Brenda R. Sharton_____
                                       Brenda R. Sharton

                                       **DECHERT LLP**
                                       *Attorneys for Defendants*

---

DEFENDANTS' MOTION TO DISMISS                                3:24-cv-00237-LL-BLM

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

INTRODUCTION ................................................................................................... 1

BACKGROUND AND FACTUAL ALLEGATIONS .............................................. 2

LEGAL STANDARD .............................................................................................. 2

ARGUMENT ........................................................................................................... 3

I.    Plaintiff Jane Doe's Claims Are Untimely. .................................................... 3

II.   Plaintiffs Fail to Plead Any Cause of Action against Defendants. .................... 5

      A.    Count 1 – Federal Wiretap Act ("FWA") .................................. 5

            1.    Defendants Were Parties to the Communications. ..................... 5

            2.    The Exception in 18 U.S.C. § 2511(2)(d) Does Not Apply. ......... 6

            3.    The Communications Were Not Intercepted "During Transmission." ...................................................................... 7

            4.    Website Navigation Data Is Not Protected by the FWA. ............. 8

      B.    Count 2 – California Invasion of Privacy Act ("CIPA") ...................... 10

            1.    Defendants Were Parties to the Communications. ..................... 10

            2.    Plaintiffs' "Aiding" Theory Fails to Allege an Independent CIPA Violation by Meta. .......................................................... 10

            3.    Meta Was a Service Provider for the Intended Recipient. .......... 12

            4.    Meta Had no Intent to Intercept Health Information. ................. 13

            5.    The Data Was Neither Intercepted in Transit Nor "Contents." ........................................................................ 13

      C.    Count 3 – Confidentiality of Medical Information Act ("CMIA") ....... 14

      D.    Counts 4 & 5 – Invasion of Privacy ......................................... 18

      E.    Count 6 – Breach of Implied Contract ..................................... 20

      F.    Count 7 – Larceny / Receipt of Stolen Property ..................... 23

      G.    Count 8 – Unjust Enrichment ................................................. 24

CONCLUSION ...................................................................................................... 25

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*Adler v. Community.com, Inc.*,
      2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ....................................14

6
*Aguilera v. Pirelli Armstrong Tire Corp.*,
7
      223 F.3d 1010 (9th Cir. 2000) .........................................................21

8
*Allen v. Cnty. of Sonoma*,
9
      2017 WL 3593340 (N.D. Cal. Aug. 18, 2017) .................................18

10
*Allen v. Novant Health, Inc.*,
11
      2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) ....................................6

12
*Alvarez v. Adtalem Educ. Grp., Inc.*,
13
      2019 WL 13065378 (N.D. Cal. Dec. 16, 2019) ...............................24

14
*In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*,
      2021 WL 5937742 (D.N.J. Dec. 16, 2021) .......................................15
15

16
*In re Apple Processor Litig.*,
      2022 WL 2064975 (N.D. Cal. June 8, 2022).....................................24
17

18
*Ashcroft v. Iqbal*,
      556 U.S. 662 (2009)............................................................................2

19
*Astiana v. Hain Celestial Grp., Inc.*,
20
      783 F.3d 753 (9th Cir. 2015) ...........................................................24

21
*Astra USA, Inc. v. Santa Clara Cnty.*,
22
      563 U.S. 110 (2011)..........................................................................16

23
*Austin v. Atlina*,
24
      2021 WL 6200679 (N.D. Cal. Dec. 22, 2021) .................................16

25
*B.K. v. Eisenhower Med. Ctr.*,
      2024 WL 878100 (C.D. Cal. Feb. 29, 2024) ..............................*passim*
26

27
*Baiul-Farina v. Lemire*,
      804 F. App'x 533 (9th Cir. 2020)....................................................24
28

*Barbour v. John Muir Health*,
   2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023) .........................................14, 18

*Bernstein v. Superior Ct.*,
   46 Cal. App. 2d 568 (1941) .....................................................................................4

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020)................................................................3, 13

*Brokaw v. Qualcomm Inc.*,
   122 F. App'x 305 (9th Cir. 2004)............................................................................22

*Brown v. Google LLC*,
   525 F. Supp. 3d 1049 (N.D. Cal. 2021)....................................................................8

*Bunnell v. Motion Picture Ass'n of Am.*,
   567 F. Supp. 2d 1148 (C.D. Cal. 2007) ...................................................................7

*Byars v. Hot Topic, Inc.*,
   2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) ........................................................12

*Campbell v. Facebook Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014)......................................................................19

*Clausing v. S.F. Unified Sch. Dist.*,
   221 Cal. App. 3d 1224 (1990) ................................................................................18

*Cody v. Boscov's, Inc.*,
   658 F. Supp. 3d 779 (C.D. Cal. 2023) ...................................................................13

*Collins v. eMachines, Inc.*,
   202 Cal. App. 4th 249 (2011) .................................................................................24

*Corona v. Sony Pictures Ent., Inc.*,
   2015 WL 3916744 (C.D. Cal. June 15, 2015)........................................................20

*Crossley v. California*,
   479 F. Supp. 3d 901 (S.D. Cal. 2020) ....................................................................18

*Doe v. Kaiser Found. Health Plan, Inc.*,
   2024 WL 1589982 (N.D. Cal. Apr. 11, 2024).............................................7, 18, 20

*In re DoubleClick Inc. Priv. Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y. 2001) .....................................................................7

iii

*Eisenhower Med. Ctr. V. Super. Ct.*,
  226 Cal. App. 4th 430 (2014) .................................................................. 15

*Esparza v. Gen Digital Inc.*,
  2024 WL 655986 (C.D. Cal. Jan. 16, 2024) ........................................... 11

*In re Facebook Consumer Privacy User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ..................................................... 21

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ................................................................... 10

*In re Facebook Internet Tracking Litig.*,
  140 F. Supp. 3d 922 (N.D. Cal. 2015) ....................................................... 9

*In re Facebook Priv. Litig.*,
  791 F. Supp. 2d 705 (N.D. Cal. 2011) ....................................................... 6

*Garcia v. Build.com, Inc.*,
  2023 WL 4535531 (S.D. Cal. July 13, 2023) ............................... 10, 11, 13

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ................................................................... 3

*Gonzales v. Uber Techs., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) ................................................... 20

*In re Google Assistant Privacy Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ..................................................... 25

*In re Google Cookie Placement Consumer Priv. Litig.*,
  806 F.3d 125 (3rd Cir. 2015) ..................................................................... 6

*In re Google Inc. Gmail Litig.*,
  2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ........................................... 7

*Gorlach v. Sports Club Co.*,
  209 Cal. App. 4th 1497 (2012) ................................................................ 22

*Graham v. Noom, Inc.*,
  2021 WL 3602215 (N.D. Cal. Aug. 13, 2021) ........................................ 12

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ..................................................... 12

iv

*Hameed-Bolden v. Forever 21 Retail, Inc.*,
   2018 WL 6802818 (C.D. Cal. Oct. 1, 2018) ......................................................21

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022)..............................................................20

*Heeger v. Facebook, Inc.*,
   509 F. Supp. 3d 1182 (N.D. Cal. 2020)..............................................................25

*Hernandez v. Hillsides, Inc.*,
   211 P.3d 1063 (Cal. 2009)...................................................................................18

*Holt v. Cnty. Of Orange*,
   91 F.4th 1013 (9th Cir. 2024) ...............................................................................3

*In re Linkedin User Privacy Litig.*,
   932 F. Supp. 2d 1089 (N.D. Cal. 2013)..........................................................22, 23

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002) .................................................................................4

*John v. Cnty. Of Sacramento*,
   2018 WL 558767 (E.D. Cal. Jan. 24, 2018) ..........................................................4

*Johnson v. Blue Nile, Inc.*,
   2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ..........................................................9

*Kane v. Univ. of Rochester*,
   2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ......................................................8

*Katz-Lacabe v. Oracle Am., Inc.*,
   668 F. Supp. 3d 928 (N.D. Cal. 2023).................................................................7

*Konop v. Haw. Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) ...........................................................................5, 7

*Kurowski v. Rush Sys. For Health*,
   659 F. Supp. 3d 931 (N.D. Ill. 2023)............................................................*passim*

*Le v. Prestige Cmty. Credit Union*,
   2023 WL 9689133 (C.D. Cal. Nov. 6, 2023) ........................................................3

*Lopez v. Apple, Inc.*,
   519 F. Supp. 3d 672 (N.D. Cal. 2021)................................................................19

v

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012)............................................19, 20, 21, 23

*Maheu v. CBS, Inc.*,
  201 Cal. App. 3d 662 (1988) ..................................................................................3

*Martin v. Sephora USA, Inc.*,
  2023 WL 2717636 (E.D. Cal. Mar. 30, 2023)....................................7, 11, 12, 13

*Maureen K. v. Tuschka*,
  155 Cal. Rptr. 3d 620 (Ct. App. 2013) ................................................................18

*McGowan v. Weinstein*,
  505 F. Supp. 3d 1000 (C.D. Cal. 2020) .................................................................3

*McKelvey v. Boeing N. Am., Inc.*,
  86 Cal. Rptr. 2d 645 (Ct. App. 1999) ....................................................................4

*Ortiz v. Perkins & Co.*,
  2022 WL 16637993 (N.D. Cal. Nov. 2, 2022) .....................................................22

*Patent Scaffolding Co. v. William Simpson Constr. Co.*,
  256 Cal. App. 2d 506 (1967) ...............................................................................21

*Pena v. GameStop, Inc.*,
  670 F. Supp. 3d 1112 (S.D. Cal. 2023) ..................................................................7

*People v. Dolbeer*,
  29 Cal. Rptr. 573 (Ct. App. 1963) .......................................................................23

*People v. Nakai*,
  107 Cal. Rptr.3d 402 (Ct. App. 2010) .................................................................19

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
  51 F.4th 1125 (9th Cir. 2022) ................................................................................6

*Pruchnicki v. Envision Healthcare Corp.*,
  845 F. App'x 613 (9th Cir. 2021)........................................................................21

*Raines v. U.S. Healthworks Med. Grp.*,
  2021 WL 5763831 (S.D. Cal. Jan. 25, 2021) ......................................................19

*Regents of Cal. v. Super. Ct.*,
  220 Cal. App. 4th 549 (2013) ..............................................................................18

vi

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ......................................................7

*Rogers v. Am. President Lines, Ltd.*,
291 F.2d 740 (9th Cir. 1961) ...........................................................................22

*Sanchez v. Compania Mexicana de Aviacion S.A.*,
361 F. App'x 751 (9th Cir. 2010) ......................................................................5

*Seaton v. Mayberg*,
610 F.3d 530 (9th Cir. 2010) ...........................................................................16

*Shulman v. Grp. W Prods., Inc.*,
955 P.2d 469 (Cal. 1998) .................................................................................19

*Siry Inv., L.P. v. Farkhondehpour*,
513 P.3d 166 (Cal. 2022) .................................................................................24

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ......................................................1, 8, 14

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ..................................................................1, 15, 16

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ...........................................................................24

*Stanley v. Univ. S. Cal.*,
178 F.3d 1069 (9th Cir. 1999) ....................................................................22, 23

*Stasi v. Immediate Health Grp. Corp.*,
501 F. Supp. 898 (S.D. Cal. 2020) ....................................................................18

*Sutter Health v. Super. Ct.*,
174 Cal. Rptr. 3d 653 (Ct. App. 2014) ........................................................14, 18

*Tanner v. Acushnet Co.*,
2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) .....................................................23

*Underhill v. Kornblum*,
2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) ....................................................13

*United States v. McTiernan*,
695 F.3d 882 (9th Cir. 2012) .............................................................................6

*United States v. Reed*,
   575 F.3d 900 (9th Cir. 2009) ...................................................................9

*Valenzuela v. Super Bright LEDS Inc.*,
   2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) .............................10, 12

*Wilson v. Rater8, LLC*,
   2021 WL 4865930 (S.D. Cal. Oct. 18, 2021)................................15, 16

*Wu v. Sunrider Corp.*,
   793 F. App'x 507 (9th Cir. 2019)...........................................................5

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) .............................................9, 19

*Young v. Facebook, Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011)................................................21

*Yunker v. Pandora Media, Inc.*,
   2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ....................................21

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ...........................................1, 8, 9, 14

**Constitutions, States, & Rules**

18 U.S.C. § 2511(2)(d) ....................................................................*passim*

18 U.S.C. § 2520(e) ...................................................................................3

42 U.S.C. § 1320d(6) ..............................................................................16

Cal. Civ. Code §§ 56 *et seq.* .............................................................*passim*

Cal. Civ. Code § 1621 .............................................................................22

Cal. Code Civ. P. § 335.1 ..........................................................................3

Cal. Code Civ. P. § 338 .............................................................................3

Cal. Code Civ. P. § 339 .............................................................................3

Cal. Code Civ. P. § 340 .............................................................................3

California Constitution Article I, § 1 ......................................................18

Cal. Pen. Code § 496 .......................................................................................2, 23

Cal. Pen. Code § 631(a) ..................................................................................*passim*

Fed. R. Civ. P. 8...................................................................................................3

Fed. R. Civ. P. 10.................................................................................................4

Fed. R. Civ. P. 12.................................................................................................2

Fed. R. Civ. P. 17.................................................................................................4

Health Information Portability and Accountability Act of 1996,
    110 Stat. 1936, Pub. L. 104-191 ........................................1, 6, 15, 16

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendant San Diego Fertility Clinic Medical Group, Inc. ("SDFC") operates three fertility centers in San Diego. Defendant Ivy Fertility Services, LLC ("Ivy") provides administrative services to SDFC and other fertility centers across America. United in their mission, SDFC and Ivy are architects of hope, having helped tens of thousands of women across the nation bring new life into the world.

Plaintiffs claim to be former patients of SDFC. Compl. ¶¶ 243, 248. They do not take issue with SDFC's quality of care. Rather, their lawsuit is about SDFC's website, which they claim shares health information with non-party Meta Platforms, Inc. ("Meta") through an analytics tool called the "Meta Pixel." *Id.* ¶¶ 15, 19. Plaintiffs are wrong. ***SDFC has never shared health information with Meta or any third party.*** But even accepting Plaintiffs' allegations as true, as the Court must at this stage, their case should be dismissed.

Importantly, Plaintiffs do not allege that Meta received their medical records or any information about their diagnoses or treatments. Instead, all they allege is that Defendants disclosed where Plaintiffs navigated to on SDFC's public website. *See, e.g.*, *id.* ¶¶ 98, 121. That is not enough. Indeed, courts have repeatedly held that website browsing data does not constitute medical information under ***any standard***—whether it be the federal Health Information Portability and Accountability Act ("HIPAA") or California law. *E.g.*, *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 951 (N.D. Cal. 2017), *aff'd* (*Smith II*), 745 F. App'x 8 (9th Cir. 2018). And Plaintiffs' theory ignores the Ninth Circuit's bright line distinction between the "contents" of communications— which may be confidential—and "record information" like a user's name, contact information, or where she navigates online—which is not. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).

Moreover, all of Plaintiff Jane Doe's claims are untimely. She claims she used SDFC's website ***over six years ago*** and does not allege *ever* using it since. Compl.

1

¶ 258. Yet all of Plaintiffs' causes of action have statutes of limitations of three years or less. Thus, Doe's claims are untimely on their face and should be dismissed.

In addition, each cause of action is incurably flawed for both Plaintiffs. For example, Plaintiffs' claims for "intercepting" communications under 18 U.S.C. § 2511 and Cal. Pen. Code § 631(a) are meritless, as a defendant cannot be liable for "eavesdropping" on itself. *See infra* Parts II.A.1 & II.B.1. Plaintiffs' stolen property claim under Cal. Pen. Code § 496 fails because computer data is not "property" within the meaning the statute. *See infra* Part II.F. And their claim under the Confidentiality of Medical Information Act ("CMIA") fails because, among other reasons, where a user goes online is not "medical information." For these reasons, and additional claim-specific defects set forth below, Plaintiffs' claims should be dismissed with prejudice.

## BACKGROUND AND FACTUAL ALLEGATIONS

Plaintiffs allege the Meta Pixel sent their "Private Information" from the SDFC website to Meta. Compl. ¶¶ 18-19.[1] Plaintiff B.W. alleges only that she used the SDFC website to run search queries about various "medical conditions" and "symptoms." *Id.* ¶ 245. She does not claim to have accessed the non-public patient portal or to have used the SDFC website to enter any personal information or medical history, make appointments, contact a physician, or make a payment. Plaintiff Jane Doe alleges she used the website to look up" the "cost … and insurance options for fertility treatments she was seeking," "make online appointments at SDFC, and to pay bills." *Id.* ¶ 259.

## LEGAL STANDARD

A complaint should be dismissed under Rule 12(b)(6) if it fails to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions

---

[1] Plaintiffs also make vague claims that Defendants shared similar information with "other third parties," but they do not identify those third parties, let alone explain how Defendants did so. *E.g.*, Compl. ¶¶ 19, 21, 33.

DEFENDANTS' MOTION TO DISMISS                                    3:24-cv-00237-LL-BLM

1  of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055

2  (9th Cir. 2008) (citation omitted).

3  ## ARGUMENT

4  **I.    Plaintiff Jane Doe's Claims Are Untimely.**

5  A complaint fails to satisfy Rule 8 and should be dismissed in full where the

6  plaintiff "fail[s] to allege approximately when the actionable misconduct occurred,"

7  especially when the defendant raises a "non-frivolous possibility" that the claims are

8  untimely. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 135 (N.D. Cal. 2020) (collecting

9  cases). A claim should also "be dismissed as untimely" if "the running of the statute

10 [of limitations] is apparent on the face of the complaint." *Holt v. Cnty. of Orange*, 91

11 F.4th 1013, 1017 (9th Cir. 2024). Both of these principles apply here and are fatal to

12 the Complaint. The *only* concrete date stated as to Jane Doe is that she visited the SDFC

13 website in September 2017. Compl. ¶ 259. She does not say she ever used the website

14 again—let alone when or how. And, because Plaintiffs claim the Meta Pixel shares data

15 "instantaneously," *id.* ¶ 80, the only alleged sharing of Jane Doe's data took place when

16 she used the site in 2017—***more than six years before she filed this suit***. All of

17 Plaintiffs' causes of action have statutes of limitations between one and three years (see

18 footnote).[2] Thus, all of her claims are facially untimely and should be dismissed in full.

19 To the extent Doe may argue that her data was shared more recently, that allegation is

20 not found in her Complaint, let alone with any approximate dates and, therefore, fails

21 to satisfy Rule 8 and cannot ward off dismissal.

22 This vagueness is especially egregious because Plaintiffs filed their case under

23 pseudonyms without leave of Court and without disclosing their identities to

---

25 [2] *See* 18 U.S.C. § 2520(e) (FWA – 2 years); Cal. Code Civ. P. § 335.1 (CMIA – 2

26 years); *id.* § 338(d) (unjust enrichment – 3 years); *id.* § 339 (implied contract – 2 years); *id.* § 340 (CIPA – 1 year); *Le v. Prestige Cmty. Credit Union*, 2023 WL 9689133, at

27 *9 (C.D. Cal. Nov. 6, 2023) (civil larceny – 1 year); *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1018 (C.D. Cal. 2020) (constitutional invasion of privacy – 1 year);

28 *Maheu v. CBS, Inc.*, 201 Cal. App. 3d 662, 676 (1988) (invasion of privacy – 1 year).

DEFENDANTS' MOTION TO DISMISS                    3:24-cv-00237-LL-BLM

Defendants—in flagrant violation of Fed. R. Civ. P. 10(a) and 17(a). *See John v. Cnty. of Sacramento*, 2018 WL 558767, at *1 (E.D. Cal. Jan. 24, 2018) ("When a party wishes to file a case anonymously or under a pseudonym, it must first petition the district court for permission to do so." (cleaned up)). Defendants notified Plaintiffs' counsel of this weeks ago during an initial meet and confer, but Plaintiffs still have not sought leave of court or disclosed their identities. This means that Defendants have no way to verify if—or when—Plaintiffs used the website. And when Doe visited the website is especially important because the SDFC website stopped using the Meta Pixel before this case was filed. Thus, in order to properly investigate Doe's claim and defend against it, Defendants need to know when she purportedly visited the website.

Moreover, even if Doe alleged Defendants continued to share her information within the limitations period (which she does not), claims based on that conduct would be barred by laches and implicit consent. Plaintiffs do not allege that SDFC's use of the Meta Pixel changed in any way from 2017 through when they filed suit. Thus, Doe's continued use of the website for over six years "amounts to a consent" to the challenged conduct. *Bernstein v. Superior Ct.*, 46 Cal. App. 2d 568, 569 (1941). As the Ninth Circuit has held, the doctrine of "laches is triggered if ***any part*** of the claimed wrongful conduct occurred beyond the limitations period. To hold otherwise would effectively swallow the rule of laches, and render it a spineless defense." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 837-38 (9th Cir. 2002).[3]

Plaintiffs attempt to salvage Doe's untimely claims with a conclusory invocation of the "delayed discovery rule." Compl. ¶ 275. This is not enough. Rather, Doe must "specifically plead facts to show[:] (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence" and make non-conclusory allegations showing diligence. *McKelvey v. Boeing N. Am., Inc.*, 86 Cal. Rptr. 2d 645, 651 (Ct. App. 1999). She does none of this.

---

[3] Except where otherwise noted, all emphasis in quotations is supplied.

DEFENDANTS' MOTION TO DISMISS                    3:24-cv-00237-LL-BLM

Instead, Plaintiffs say only that "Defendants kept [their conduct] secret" and "Plaintiffs only discovered that their Private Information had been disclosed by Defendants in January 2024." Compl. ¶ 275. But without any particulars as to the manner of discovery, Doe's diligence, and why she could not have found out about the alleged conduct in the *six years* it took her to bring suit, the discovery rule does not apply and Doe's claims must be dismissed. *See, e.g.*, *Wu v. Sunrider Corp.*, 793 F. App'x 507, 511 (9th Cir. 2019) (affirming dismissal where the plaintiff failed to include specific allegations as to how she discovered her injury).[4] Moreover, Plaintiffs cannot credibly argue the challenged conduct only started more recently, as that allegation is missing from the Complaint. And, anyway, if that were true, the relevant time-period for Plaintiffs' proposed class should be narrowed. Plaintiffs cannot have it both ways.

## II.   Plaintiffs Fail to Plead Any Cause of Action against Defendants.

### A. Count 1 – Federal Wiretap Act ("FWA")[5]

#### 1.     Defendants Were Parties to the Communications.

Plaintiffs' FWA claim is patently frivolous because the FWA is a one-party consent statute and SDFC was a party to the communications. 18 U.S.C. § 2511(2)(d) (it is not unlawful for someone to "intercept… electronic communication where such person is a party to the communication."). "[T]he 'consent' exception to [the FWA] *allows one party to a wire communication to authorize a third party to intercept the communication*." *Konop v. Haw. Airlines, Inc.*, 302 F.3d 868, 880 (9th Cir. 2002). Here, the gravamen of Plaintiffs' case is that Defendants disclosed Plaintiffs' "*communications with Defendants*" to Meta. Compl. ¶ 84(b). *According to Plaintiffs,* these communications were "intended … for Defendants." *Id.* ¶ 80. Thus, even if all of Plaintiffs' allegations were true, the FWA claim fails as a matter of law. SDFC cannot be liable for "eavesdropping" on itself.

---

[4] In addition, the discovery rule does not apply to breach of contract claims. *Sanchez v. Compania Mexicana de Aviacion S.A.*, 361 F. App'x 751, 752 (9th Cir. 2010).

[5] The FWA is Title I the Electronic Communications Privacy Act ("ECPA").

Courts have repeatedly dismissed FWA claims in similar cases, including suits involving the use of the Meta Pixel by healthcare providers. *E.g.*, *Kurowski v. Rush Sys. For Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023) (hospital's use of Meta Pixel); *Allen v. Novant Health, Inc*., 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023) (same); *In re Google Cookie Placement Priv. Litig.*, 806 F.3d 125, 142-43 (3rd Cir. 2015) (dismissing FWA claim because tracking cookies placed by advertising providers made the advertiser the intended recipient of the electronic transmission); *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011) (dismissing FWA claim on same grounds), *aff'd in part*, 572 F. App'x 494 (9th Cir. 2014).

### 2.    The Exception in 18 U.S.C. § 2511(2)(d) Does Not Apply.

Plaintiffs try to sidestep this obvious problem by claiming that Defendants "intercepted … communications for the purpose of committing a criminal or tortious act." Compl. ¶ 303. This argument is meritless. While the FWA contains an exception to the one-party-consent rule where a "communication is intercepted for the purpose of committing any criminal or tortious act," 18 U.S.C. § 2511(2)(d), this exception does not apply simply because the alleged interception was unlawful. That would be circular. Rather, the criminal or tortious purpose "must be ***separate and independent from the act of the recording***." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). "[T]he focus is *not* upon whether the interception itself violated [the] law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Id.* (emphasis in original); *accord United States v. McTiernan*, 695 F.3d 882, 890 (9th Cir. 2012). Here, Plaintiffs list various wrongs they allege Defendants committed by using the Meta Pixel, including violating HIPAA, defrauding users, or violating users' privacy. Compl. ¶¶ 304-05, 308, 310-14. But not one of those alleged purposes is "separate and independent from the act of recording." *Planned Parenthood*, 51 F.4th at 1136. Rather, those supposed torts "occur[] through the act of interception itself," and therefore, do not fall within the statutory exception. *In re Google*, 806 F.3d at 145. Tellingly, Plaintiffs do not plead

facts showing Defendants made any tortious or criminal *use* of the allegedly intercepted communications or even had intent to do so.

Plaintiffs also allege that Defendants intended to use the intercepted communications "to increase its [sic] profit margins." Compl. ¶ 306. Acting for commercial gain—as Plaintiffs allege—is not a criminal or tortious purpose. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (dismissing FWA claim in Meta Pixel case where plaintiff attempted to invoke crime-tort exception based on defendant's profit motive); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 518 (S.D.N.Y. 2001); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014).

Unsurprisingly, courts have flatly rejected similar attempts to rely on 18 U.S.C. § 2511(2)(d) in internet tracking cases. *E.g.*, *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1119-20 (S.D. Cal. 2023); *Kurowski*, 659 F. Supp. 3d at 938 (Meta Pixel case); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (same). Indeed, earlier this year another California court rejected identical allegations in another case brought by Plaintiffs' counsel (same firm, same lawyers) against another healthcare provider. *B.K. v. Eisenhower Med. Ctr.*, 2024 WL 878100, at *5 (C.D. Cal. Feb. 29, 2024). The allegations here are no different. SDFC's consent to the use of the Meta Pixel on its website is fatal to the FWA claim. Period.

### 3. The Communications Were Not Intercepted "During Transmission."

The FWA claim fails for an additional, independent reason. The FWA only applies where a communication is "acquired during transmission." *Konop*, 302 F.3d at 878. Relaying a message after it has reached its intended recipient does not count. *See Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007). "[B]ecause internet communications travel so quickly, there is only an incredibly narrow window during which an interception could occur," and in most cases the FWA

1  does not apply because internet communications are "accessed either on the originating

2  or receiving end," not "during transmission." *Martin v. Sephora USA, Inc.*, 2023 WL

3  2717636, at *12 (E.D. Cal. Mar. 30, 2023), *rpt. & rec. adopted,* 2023 WL 3061957

4  (E.D. Cal. Apr. 24, 2023).

5     Plaintiffs fail to plead their communications were intercepted "during

6  transmission." Just the opposite, they explicitly say that "Defendants ***store*** Plaintiffs'

7  … Private Information on their own servers ***and then transmit it*** to unauthorized third

8  parties like Facebook" and that the Meta Pixel sends information "***[a]fter*** a user fills

9  out [an] appointment form." Compl. ¶¶ 67, 92, 102. Indeed, the Complaint contains *no*

10 facts showing how data was intercepted during transmission.

11    Courts have already held that the Meta Pixel and similar tracking technologies

12 do not intercept communications during transmission. For example, Plaintiffs allege

13 that the Meta Pixel transmits "GET requests" received by the SDFC website. But, as

14 the Northern District explained in *Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D.

15 Cal. 2021), a website's "[s]ending a duplicate GET request to Google" is not

16 "incidental to the transmission of the … communication between the user's computer

17 and the website." *Id.* at 1072. In other words, when a website uses tools like the Meta

18 Pixel, rather than an interception, two separate communications occur—one between

19 the website and the user's browser, and a separate, subsequent one to Meta; no

20 communication is being intercepted "during transmission." *Smith*, 262 F. Supp. 3d at

21 951; *see also Kane v. Univ. of Rochester*, 2024 WL 1178340, at *2 (W.D.N.Y. Mar.

22 19, 2024) (describing the Meta Pixel as sending a "separate message to [Meta]").

23 Accordingly, the FWA claim fails as a matter of law and should be dismissed.

24     **4.    Website Navigation Data Is Not Protected by the FWA.**

25    Finally, as Plaintiffs recognize, their FWA claim requires them to plead that the

26 "contents" of their transmissions were intercepted. Compl. ¶¶ 293-94 (citing 18 U.S.C.

27 § 2510(4) & (8)). They fail to do so, which again is another independent reason Count

28 1 should be dismissed. Under binding Ninth Circuit precedent, the "content" of a

8

communication is "the intended message conveyed by the communication." *Zynga*, 750 F.3d at 1106. It does not include "record information regarding the characteristics of the message that is generated in the course of the communication" such as "the name, address and subscriber number or identity of a subscriber or customer." *Id.* (cleaned up). *Zynga* is controlling. There, Meta shared "referrer headers" that told advertisers a user's Facebook ID and what page the user was looking at when he or she clicked on an ad. *Id.* at 1101-02. The court held that Meta's conduct did not violate ECPA as a matter of law because disclosing what websites users visited did not reveal the ***contents*** of their communications with Meta. *Id.* at 1107. This was so even though that data was linked to Facebook IDs and "an enterprising advertiser" could identify the users and draw inferences about them, such as that a particular person might be gay. *Id.*

**There is no daylight between this case and *Zynga***. Plaintiffs claim Defendants disclosed what webpages they clicked on tied to Facebook IDs, IP addresses, device IDs, or location. *E.g.*, Compl. ¶¶ 121, 252. But courts applying *Zynga* have repeatedly held that similar website tracking tools do not transmit the "contents" of communications as required to state a claim. *United States v. Reed*, 575 F.3d 900, 914-17 (9th Cir. 2009) (location data); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021) ("keystrokes, mouse clicks, [and] pages viewed"); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *3 (N.D. Cal. Apr. 8, 2021) (IP addresses); *In re Facebook Internet Tracking*, 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015) (alleged tracking of websites visited by Facebook users via cookies did not violate FWA).

Plaintiffs use vague rhetoric to try to blur the Ninth Circuit's bright line between browsing information and actual medical records or patient-doctor communications. But they do not—and cannot—allege any specific facts showing that the *contents* of their communications have ever been transmitted to Meta. Plaintiffs' reciting the legal conclusion that "medical information," "health information," or "personal information" is transmitted to Meta, without alleging any facts in support, *see, e.g.*, Compl. ¶¶ 14, 203, 260, 283, 326, is insufficient as a matter of law. This is reason alone

to dismiss their FWA claim.

**B. Count 2 – California Invasion of Privacy Act ("CIPA")**

Plaintiffs' CIPA claim fails as a matter of law. To plead a claim under Cal. Pen. Code § 631(a), Plaintiffs must allege facts showing someone "willfully" intercepted the contents of their communications while "in transit." Compl. ¶ 321 (citing § 631(a)).[6] Even accepting all of Plaintiffs' factual allegations as true, Plaintiffs have failed to plead a valid CIPA claim because, like the FWA, CIPA does not apply to interceptions by a party to the communication. To the extent Plaintiffs purport to hold Defendants liable for aiding a violation by Meta, that theory fails too because they do not plead a predicate CIPA violation by Meta.

**1.    Defendants Were Parties to the Communications.**

Like the FWA, § 631 contains "an exemption from liability for a person who is a 'party' to the communication." *E.g.*, *In re Facebook*, 956 F.3d 589, 607 (9th Cir. 2020) (collecting cases). As above (Part II.A.1), SDFC was the *intended* recipient of the communications. This unquestionably bars any claim premised on Defendants' "wiretapping" those communications. *See, e.g.*, *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *5-6 (S.D. Cal. July 13, 2023) (dismissing CIPA claim against website).

**2.    Plaintiffs' "Aiding" Theory Fails to Allege an Independent CIPA Violation by Meta.**

Recognizing this fatal flaw in their case, Plaintiffs also claim Defendants are secondarily liable for aiding "[Meta] and other third parties" in intercepting Plaintiffs' "communications" with the SDFC website. Compl. ¶ 323. While it is true that, unlike

---

[6] Section 631 applies to three kinds of conduct: "[1] intentional wiretapping, [2] wilfully attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *4 (S.D. Cal. July 13, 2023). A claim can also be based on a theory of aiding and abetting one of those acts. *Id.* However, Clause 1 applies only to tapping telephone lines and not to internet activity. *Valenzuela v. Super Bright LEDS Inc.*, 2023 WL 8424472, at *4 (C.D. Cal. Nov. 27, 2023) (collecting cases).

DEFENDANTS' MOTION TO DISMISS                    3:24-cv-00237-LL-BLM

the FWA, CIPA does allow a party to a communication to be held liable for aiding a third-party "eavesdropper," *Garcia*, 2023 WL 4535531, at *5, Plaintiffs must allege an *independent* violation by Meta that Defendants aided. *Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *3-4 (C.D. Cal. Jan. 16, 2024). Here, they do not.

Indeed, Plaintiffs' theory of secondary liability is a sham. Their allegations relate solely to Defendants' *own* conduct in using the Meta Pixel. For example, Plaintiffs claim Defendants violated CIPA "[b]y disclosing Plaintiffs' and Class Members' private health Information" to Meta, not that *Meta* engaged in wiretapping or eavesdropping. Compl. ¶ 331. *Garcia* is on point. There, the plaintiff alleged that the defendant allowed third parties to eavesdrop on online chats between customers and service representatives on the defendant's website. 2023 WL 4535531, at *1. As here, the plaintiff claimed the defendant had "covertly embedded software code ... into its website that automatically intercepts, records, and creates transcripts of all conversation using the website chat feature" with third parties. *Id.* at *5. Chief Judge Sabraw dismissed the complaint, finding that such allegations could not support a theory that the defendant had aided the third parties in violating CIPA because those facts relate to "*Defendant's own* conduct, not the conduct of a third-party." *Id.* (emphasis original). "[T]his cannot be a basis for liability because a participant to a conversation cannot eavesdrop on their own conversation." *Id.*; *see also Martin*, 2023 WL 2717636, at *12 (dismissing secondary CIPA claim).

The same is true here. Plaintiffs repeatedly allege that "*Defendants* installed tracking technologies on their Web Properties," Compl. ¶ 15, "*Defendants* embedded undetectable tracking Facebook pixels … on the Web Properties," *id.* ¶ 16, "*Defendants* control which of the webpages on the Website contain the Pixels," *id.* ¶ 63, and "*[t]he process of adding the Pixel to webpages … must be undertaken by the website owner.*" *Id.* ¶ 113 (emphasis Plaintiffs'). And, as the *Martin* court noted when dismissing similar claims, it is "problematic to [their] claims" that Plaintiffs have not "named a third-party defendant in this action." 2023 WL 2717636, at *12. Indeed, they

do not even *identify* the "other third parties" besides Meta that Defendants supposedly conspired with. *See id.*

### 3.     Meta Was a Service Provider for the Intended Recipient.

Even if Plaintiffs alleged some active interception by Meta, their CIPA claim would still fail. California federal courts have repeatedly rejected CIPA claims where, as alleged here, the third party is being used to facilitate Defendants' *own* marketing and analytics. A "software vendor" that allows a website operator to "analyze its own data" is "not a third-party wiretapper because it is not an outsider" but rather an extension of the party itself. *E.g.*, *Graham v. Noom, Inc.*, 2021 WL 3602215, at *1 (N.D. Cal. Aug. 13, 2021) (dismissing CIPA claims with prejudice); *see also, e.g.*, *Valenzuela*, 2023 WL 8424472, at *1, 8 (dismissing CIPA claim where website used third-party service to store and analyze records of website communications); *Byars v. Hot Topic, Inc.*, 2023 WL 2026994, at *10 (C.D. Cal. Feb. 14, 2023) (similar).

Plaintiffs' CIPA claim fails for the same reason. They claim website operators, like Ivy and SDFC, use the Meta Pixel *for their own purposes* "to improve their advertising and bolster their revenue." Compl. ¶ 64; *see also id.* ¶¶ 15, 26-32, 59, 108, 138-40, 142 (similar). *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021), is directly on point. There, defendant Noom allegedly used third-party software to record "visitor data such as keystrokes, mouse clicks, and page scrolling," which allegedly resulted in the disclosure of "medical information." *Id.* at 823-29. As here, the plaintiffs claimed that Noom thereby aided the third party in eavesdropping on website users. The court rejected this theory, holding that the third party was "an extension of Noom … that allows Noom to record and analyze its own data in aid of Noom's business" and, therefore, "is not a third-party eavesdropper." *Id.* at 833. The same is true here. Plaintiffs allege that: "[a]fter intercepting and collecting this information, Facebook processes it, analyzes it" on Defendants' behalf, and "assimilates it into datasets" that Defendants use to target their marketing. Compl. ¶¶ 125, 135-40. Thus, as in *Graham*, the alleged "interception" is simply part of providing a service to Defendants, and Meta

"is not a third-party eavesdropper." 533 F. Supp. 3d at 833.

Plaintiffs attempt to sidestep this defect by making a sparse and conclusory allegation that Meta also uses "Pixel Information" for its "own marketing purposes." Compl. ¶ 129. But their single-sentence assertion is far "too vague and conclusory" to demonstrate Meta is an independent eavesdropper. *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782-83 (C.D. Cal. 2023). And, in any event, this claim about Meta's practices is pled in the abstract. Plaintiffs do not even *attempt* to allege that Meta used data from *SDFC's* website—let alone data about Plaintiffs themselves—for any independent purposes. Thus, as in *Garcia*, *Cody*, and *Martin*, Plaintiffs' "aiding" allegations are a transparent attempt to hold Defendants liable for "eavesdropping" on their own communications—which CIPA squarely prohibits.

### 4.    Meta Had no Intent to Intercept Health Information.

Even if Plaintiffs adequately alleged Meta played an active role in Defendants' use of the Meta Pixel, Plaintiffs must also plausibly allege that Meta *intentionally* intercepted the data at issue. Cal Pen. Code § 631(a). In fact, however, Plaintiffs plead precisely the opposite: that Meta "requires website owners using the Meta Pixel" to refrain from sharing "health, financial information or other categories of sensitive information." Compl. ¶ 115 (emendations Plaintiffs'). In other words, the Complaint makes clear that Meta does ***not*** want to intercept "health information" or "sensitive information," and, therefore, on Plaintiffs' own theory, did not violate CIPA as to data received from SDFC's website.

### 5.    The Data Was Neither Intercepted in Transit Nor "Contents."

Plaintiffs' CIPA claim has two more fatal defects. CIPA only applies where the "contents or meaning" of a communication is intercepted "in transit." Cal. Penal Code § 631(a). These requirements are identical to the FWA's "contents" and "during transmission" elements discussed *above* (Parts II.A.3 & 4). *See, e.g.*, *Underhill v. Kornblum*, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."); *Brodsky*, 445 F.

Supp. 3d at 127 (dismissing CIPA claim with prejudice based on *Zynga*). Accordingly, the same defects fatal to Plaintiffs' FWA claim also doom their CIPA claim. *See, e.g.*, *Adler v. Community.com, Inc*., 2021 WL 4805435, at *3-4 (C.D. Cal. Aug. 2, 2021) (dismissing FWA and CIPA claims). Indeed, a California trial court recently dismissed CIPA claims based on the use of the Meta Pixel on a hospital website because "the duplication and sending of Facebook's secret code happens after the requests reaches its destination" i.e., the Defendants' website. *Barbour v. John Muir Health*, 2023 WL 2618967, at *5 (Cal. Super. Ct. Jan. 5, 2023). "Accordingly," as here, "Plaintiffs have not alleged Defendant's 'interception' while 'in transit.'" *Id.*

The bottom line is that CIPA was not intended to apply, and does not apply, to circumstances like this. This is not a case where someone tapped phone lines to intercept private calls to doctors to learn what was discussed. Plaintiffs do not allege the actual contents of their confidential communications with Defendants were ever sent to Meta. They certainly weren't intercepted "in transit." And, to the extent they were disclosed at all, the Complaint is clear that such disclosure was done by a party to the communications (Defendants) and, therefore, not covered by CIPA.

## C. Count 3 – Confidentiality of Medical Information Act ("CMIA")

The California CMIA is intended to address disclosures of actual medical records by healthcare providers. That is, "giving out medical information on a patient." *Sutter Health v. Super. Ct.*, 174 Cal. Rptr. 3d 653 (Ct. App. 2014). Here, Plaintiffs' CMIA claim should be dismissed for three independent reasons.

***First***, the CMIA only applies to medical records "in possession of or derived from a provider of health care." Cal. Civ. Code § 56.05(j). Plaintiffs do not allege that Defendants shared their medical records. Rather, they allege that Defendants shared information about Plaintiffs' searches on Defendants' *publicly available websites* regarding the cost and availability of various treatments. *See* Compl. ¶¶ 245, 252. Such searches do not constitute medical information as "[t]hese pages contain general health information that is accessible to the public at large." *Smith*, 262 F. Supp. 3d at 955.

1    Indeed, no login is required to browse the websites referenced in the Complaint.

2    Plaintiffs' theory here is indistinguishable from the one rejected in *Smith*. There,

3    the plaintiffs alleged that operators of medical websites violated HIPAA and California

4    law through the use of tracking tools that, like the Meta Pixel, shared users' browsing

5    history with Meta. *Id.* at 948. These tools told Meta that certain users had visited "pages

6    containing information about treatment options for melanoma, information about a

7    specific doctor, search results related to the phrase 'intestine transplant,' a wife's blog

8    post about her husband's cancer diagnosis, and other publicly available medical

9    information." *Id.* at 954-55. The court held that none of this constituted "protected

10   health information." *Id.* at 954. As the Ninth Circuit explained, in affirming, disclosing

11   that "Plaintiffs searched and viewed publicly available health information … cannot,

12   in and of itself, reveal details of an individual's health status or medical history." *Smith*

13   *II*, 745 F. App'x at 8. Such information "stands in stark contrast to the personally

14   identifiable patient records and medical histories protected by [HIPAA]—information

15   that unequivocally provides a window into an individual's personal medical history."

16   *Id.*; *see also Kurowski*, 659 F. Supp. 3d at 938 (holding that data send by Meta Pixel

17   on hospital's website was not "identifiable health information" under HIPAA).

18   Plaintiffs also assert—without any detail—that Defendants disclosed

19   "appointment type, physician(s) selected," Plaintiffs' "status as medical patients," and

20   "PII" including IP addresses, device identifiers, and Facebook IDs. Compl. ¶¶ 84, 252,

21   270. But this kind of information is not covered by the CMIA either. *See Eisenhower*

22   *Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430, 436 (2014) ("the fact that [a person]

23   was a patient is not in itself medical information" under the CMIA); *Wilson v. Rater8,*

24   *LLC*, 2021 WL 4865930, at *1, *5 (S.D. Cal. Oct. 18, 2021) ("[p]laitiff's name, cellular

25   telephone number, treating physician names, medical treatment appointment

26   information, and medical treatment discharge dates and times" are not "medical

27   information under the CMIA"); *In re Am. Med. Collection Agency Customer Data Sec.*

28   *Breach Litig.*, 2021 WL 5937742, at *34 (D.N.J. Dec. 16, 2021) (dates of service and

15

referring doctor not "medical information" under CMIA).

Plaintiffs mistakenly rely on recent guidance from the Federal Department of Health and Human Services' Office of Civil Rights ("OCR") stating that website tracking tools may disclose "protected health information" ("PHI") under HIPAA. Compl. ¶¶ 22, 53-54. But HIPAA and the CMIA are different statutes with different definitions. HIPAA applies to "health information," 42 U.S.C. § 1320d(6), whereas the CMIA applies only to "*medical* information." Cal. Civ. Code § 56.05(j). The latter is much more narrow. *See* 42 U.S.C. § 1320d(6) (defining "health information" to include "*any* information, including demographic information" that relates to "the provision of healthcare"). For example, Chief Judge Sabraw explicitly held in *Wilson* that a "[p]laintiff's name, cellular telephone number, treating physician names, medical treatment appointment information, and medical treatment discharge dates and times" are not "medical information under the CMIA." 2021 WL 4865930, at *5.

In addition, because "HIPAA ... provides no private right of action," *Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010), courts have repeatedly held that "[a]n alleged HIPAA violation cannot form the basis of" another claim. *Austin v. Atlina*, 2021 WL 6200679, at *3 (N.D. Cal. Dec. 22, 2021). As the Supreme Court has explained, "[r]ecognition of any private right of action for violating a federal statute … must ultimately rest on congressional intent to provide a private remedy." *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 117 (2011) (cleaned up). To allow HIPAA regulations to create backdoor liability under California law would let plaintiffs conjure up a private right of action for alleged HIPAA violations despite Congress' express decision not to create one. Finally, the OCR bulletin is not law even as to HIPAA. Rather, this Court is bound by the Ninth Circuit's contrary holding in *Smith II* that website browsing data is not PHI. And *Kurowski*—decided after the OCR bulletin— took the same approach.

Nor can Plaintiffs salvage their claims with vague and conclusory (and false) allegations that the Meta Pixel was installed in the "Patient Portal" (i.e., the secure

portion of the site where patients can see their medical records) and disclosed their "medical histories." Compl. ¶¶ 60, 252, 270. The fact that the Meta Pixel was used on the public SDFC website does not mean it was used anywhere else. As Plaintiffs acknowledge, "Pixels are programmable, meaning that Defendants control which of the webpages on the Website contain the Pixels and which events are tracked and transmitted" and which are not. *Id.* ¶ 63. Tellingly, Plaintiffs include dozens of paragraphs and screen shots of computer code showing how the Meta Pixel tracks activity on SDFC's *public* website, *id.* ¶¶ 72-106, but they do not include similar details about the patient portal. In other words, Plaintiffs performed a technical analysis of the SDFC website and what they found in the patient portal does not help their case.

Here again the dismissal of identical allegations brought by Plaintiffs' counsel in *B.K.* is instructive. As in *B.K.*, Plaintiffs' "Complaint is replete with conjectures and hypothetical scenarios and patients" but "fail[s] to allege any specificity as to what medical information was allegedly disclosed or when it was disclosed." 2024 WL 878100, at *4. Instead, Plaintiffs simply repeat *ad nauseam* that Defendants shared "health information" and "medical histories," as if the repetition will make it so. Compl. ¶¶ 14, 252, 270, 331. Such allegations fall far short of pleading that Defendants shared medical records as prohibited by the CMIA.

**Second**, the CMIA only applies to information that is "individually identifiable," meaning it "includes or contains an[] element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number." Cal. Civ. Code § 56.05(j). Plaintiff B.W. does not allege such information was shared about her. Instead, the Complaint alleges only that Defendants shared her Facebook ID, "computer IP address," and general "location"—but nothing linked to her real-world identity. *See* Compl. ¶ 252. Because the Complaint does not allege that Defendants disclosed B.W.'s "full name, or … any of the other identifying information listed in the statute," her CMIA claim is fatally flawed. *Maureen K. v. Tuschka*, 155 Cal. Rptr. 3d

17

620, 631 (Ct. App. 2013). As the *Kaiser* court noted in dismissing similar CMIA claims in a Meta Pixel case, "[t]he fact that third parties may have assigned unique identifiers to individuals using the … website" like Facebook IDs. "does not in and of itself mean that those individuals' actual *identities* could be divined." 2024 WL 1589982, at \*21.

      **Third**, the CMIA is only violated if the data is actually *viewed* by a third party. *Stasi v. Immediate Health Grp. Corp.*, 501 F. Supp. 898, 922-23 (S.D. Cal. 2020). Plaintiffs allege only that the data was sent to Meta, but not that anyone at Meta viewed it. *E.g.*, Compl. ¶¶ 15, 18, 19. Such allegations fail to state a CMIA claim as a matter of law. *See, e.g.*, *Sutter Health*, 174 Cal. Rptr. 3d at 657 (no claim under CMIA when there was no allegation that anyone ever viewed medical information that was exposed in a data breach); *Regents of Cal. v. Super. Ct.*, 220 Cal. App. 4th 549, 570 (2013) (similar). Indeed, the *Barbour* court dismissed identical CMIA claims involving the use of the Meta Pixel because "Plaintiffs have not alleged that the information was 'actually read.'" 2023 WL 2618967, at \*7-8; *accord B.K.*, 2024 WL 878100, at \*4. As in *B.K.*, *Barbour* and *Sutter Health*, Plaintiffs' CMIA claim should be dismissed.

      **D. Counts 4 & 5 – Invasion of Privacy**

      Count 4 asserts a claim for "money damages" under the California Constitution. Compl. ¶¶ 305-07. But money damages are not available for an alleged violation of article I, section 1 of the California Constitution. *See Clausing v. S.F. Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1238 (1990); *Crossley v. California*, 479 F. Supp. 3d 901, 918 (S.D. Cal. 2020). Count 4 must be dismissed for this reason alone. *E.g.*, *Allen v. Cnty. of Sonoma*, 2017 WL 3593340, at \*5 (N.D. Cal. Aug. 18, 2017). But if that were not enough, Plaintiffs' invasion of privacy claims also fail on the elements.

      Specifically, to plead a common law intrusion upon seclusion, Plaintiffs must plead: (1) Defendants "intentionally intrude[d] into a place, conversation, or matter as to which [(2)] the plaintiff has a reasonable expectation of privacy" and (3) that the intrusion was "highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1072 (Cal. 2009). A constitutional invasion of privacy claim is

18

"functionally identical." *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 690 (N.D. Cal. 2021). None of these elements is satisfied here.

**First**, Defendants cannot "intrude" into communications that Plaintiffs admit they "intended … Defendants to receive." Compl. ¶ 341. The tort of intrusion describes spying or prying into the private life of another. *See Shulman v. Grp. W Prods., Inc.*, 955 P.2d 469, 490 (Cal. 1998). Without an initial intrusion in obtaining it, disclosure of medical information to third parties does not support a claim. *Raines v. U.S. Healthworks Med. Grp.*, 2021 WL 5763831, at *9 (S.D. Cal. Jan. 25, 2021), *aff'd in rel. part,* 2023 WL 6866339 (9th Cir. Oct. 18, 2023). Accordingly, *Kurowski* recently held that the use of the Meta Pixel on a hospital website does not support an intrusion upon seclusion claim because "the allegedly intercepted communications were intended to reach [the defendant]." 659 F. Supp. 3d at 943-44. In intrusion claim cannot lie where the "harm for which [the defendant] is responsible, if any, is its disclosure of patient data … not the obtaining of that data." *Id.*

**Second**, Plaintiffs had no reasonable expectation of privacy in their browsing information. This is settled law. Courts have consistently held that there is no reasonable expectation that a website operator will not collect "browsing data" from visitors to its website, including "keystrokes and clicks; pages viewed; shipping and billing information; date, time, and duration of visit; IP address and physical location; and browser type and operating system." *Yoon*, 549 F. Supp. 3d at 1086 (collecting cases). Analogously, "California appeals courts have generally found that Internet-based communications are not 'confidential'" under the Invasion of Privacy Act "because such communications can easily be shared by, for instance, the recipient(s) of the communications." *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014); *see also People v. Nakai*, 107 Cal. Rptr. 3d 402 (Ct. App. 2010).

**Third**, not every invasion of privacy is actionable; the invasion must be "highly offensive." This is a "high bar." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Courts have repeatedly held that website tracking and similar data

19

collection practices constitute "routine commercial behavior" and thus cannot sustain an invasion of privacy claim. *E.g.*, *id.* (disclosure of users' browser history to third parties); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022) (disclosure of users' use of fertility tracker app and other apps allegedly revealing health information). Plaintiffs have not pled facts sufficient to establish a serious invasion of privacy, particularly because all they have alleged is that they used SDFC's website to search for medical terms, book appointments, and pay bills. Compl. ¶¶ 245, 259. *See, e.g.*, *B.K.*, 2024 WL 878100, at *7 (dismissing invasion of privacy claim in Meta Pixel case where plaintiffs alleged they used the website for "medical searches and inquiries" but failed to "plead that any medical information was disclosed").

That the alleged intrusion was not "highly offensive" is corroborated by Plaintiffs' failure to allege that their information was misused. Plaintiffs claim, in the abstract, that "[t]he mishandling of such private and sensitive health information can have serious consequences" including "discrimination in the workplace and/or denial of insurance coverage" or "to the reputation, health, or physical safety of the individual." Compl. ¶¶ 3, 54. But they do not allege that any of these things happened to them. Without particular allegations about what was done with their information, Plaintiffs have "not plausibly alleged a serious invasion of privacy." *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1092-93 (N.D. Cal. 2018); *see also Kaiser*, 2024 WL 1589982, at *19 (dismissing invasion of privacy claim based on use of Meta Pixel where there were no allegations that the defendant "knew and/or approved of third parties collecting and/or using information for their own purposes").

### E.  Count 6 – Breach of Implied Contract

"An implied-in-fact contract requires proof of the same elements necessary to evidence an express contract: mutual assent or offer and acceptance, consideration, legal capacity and lawful subject matter." *Corona v. Sony Pictures Ent., Inc.*, 2015 WL 3916744, at *6 (C.D. Cal. June 15, 2015). Plaintiffs' implied contract claim fails for multiple independent reasons.

***First***, in California, "[a] breach of contract without damage is not actionable." *Patent Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal. App. 2d 506, 511 (1967). Contract damages must be "appreciable and actual." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000). "Nominal damages, speculative harm, or threat of future harm do not suffice…." *Low*, 900 F. Supp. 2d at 1028. Plaintiffs do not plead economic damages from the alleged breach. "[T]he mere misappropriation of personal information does not establish compensable damages." *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021) (cleaned up). Thus, courts have routinely held that "damages based on the collection and dissemination of personal information are insufficient to state a claim for breach of contract." *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *13 (N.D. Cal. Mar. 26, 2013); *Low*, 900 F. Supp. 2d at 1028-29; *Hameed-Bolden v. Forever 21 Retail, Inc.*, 2018 WL 6802818, *3, (C.D. Cal. Oct. 1, 2018).

Plaintiffs cannot cure this defect by alleging that unrelated entities buy and sell similar data. Compl. ¶¶ 220-35. Even if that were true:

> it does not follow that the same information … has independent economic value to an individual user. The plaintiffs do not plausibly allege that they intended to sell their non-disclosed personal information to someone else. Nor, in any event, do they plausibly allege that someone else would have bought it as a stand-alone product.

*In re Facebook Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019). Likewise, even though "personal information may have value in general," Plaintiffs fail "to adequately allege that [their] personal information actually lost value." *Pruchnicki*, 845 F. App'x 613, 615 (9th Cir. 2021). Without actual damages, Plaintiffs' contract claim fails as a matter of law. *B.K.*, 2024 WL 878100, at *7 (dismissing breach of implied contract claim in Meta Pixel case against hospital).

***Second***, Plaintiffs fail to include any details about the terms of the supposed contract or how it was formed. *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011). "An implied contract is one, the existence and terms of which are manifested by conduct." Cal. Civ. Code § 1621. It is unclear what "conduct" Plaintiffs

contend created the contract. For instance, Plaintiffs claim that they "entered into contracts with Defendants by which Defendants agreed to safeguard and protect such information," Compl. ¶ 351, but they do not explain how Defendants made these promises or that Plaintiffs saw them, relied on them, or otherwise intended for them to form the basis for an agreement. In these circumstances, Plaintiffs fail to establish a "mutual agreement and intent" necessary to support an implied contract. *Gorlach v. Sports Club Co.*, 209 Cal. App. 4th 1497, 1508 (2012).

Even worse, the only specific examples of supposed "promises" Plaintiffs identify are in SDFC's written Privacy Policies. Compl. ¶¶ 143-150, 351. By definition, an implied contract is one where "the agreement and promise have not been expressed in words." *Stanley v. Univ. S. Cal.*, 178 F.3d 1069, 1078 (9th Cir. 1999). To the extent Plaintiffs rely on SDFC's Privacy Policies, the implied contract claim fails because "there exists … a valid express contract which covers the same subject matter." *Rogers v. Am. President Lines, Ltd.*, 291 F.2d 740, 742 (9th Cir. 1961); *accord, e.g.*, *Brokaw v. Qualcomm Inc.*, 122 F. App'x 305, 306-07 (9th Cir. 2004).

***Third***, Plaintiffs fail to adequately allege they provided consideration for Defendants' supposed promise not to use tracking tools like the Meta Pixel. "[S]everal courts have specifically found that consideration is required for an implied contract claim regarding data security." *Ortiz v. Perkins & Co.*, 2022 WL 16637993, at *6 (N.D. Cal. Nov. 2, 2022) (collecting cases). The fact that Plaintiffs paid "compensation for their medical care," Compl. ¶ 351, is insufficient because Plaintiffs do not allege that they paid anything *additional* for the privacy protections they now claim they are entitled to. *In re Linkedin User Privacy Litig.*, 932 F. Supp. 2d 1089 (N.D. Cal. 2013), is on point. There, the plaintiffs brough implied contract claims against LinkedIn following a data breach for failing to adequately secure user data. *Id.* at 1090-91. The users, who had paid LinkedIn for premium subscriptions, claimed (like Plaintiffs here) that "in exchange for the fees they paid for the premium membership account, LinkedIn promised, among other things, to provide them with a particular level of security to

protect their data." *Id.* at 1093. The court completely rejected that argument because:

> when a member purchases a premium account upgrade, the bargain is not for a particular level of security, but actually for the advanced networking tools and capabilities to facilitate enhanced usage of LinkedIn's services. The FAC does not sufficiently demonstrate that included in Plaintiffs' bargain for premium membership was the promise of a particular (or greater) level of security that was not part of the free membership.

*Id.* The same is true here. There are no allegations that Plaintiffs paid more for medical care than patients who did not use the SDFC website. Indeed, the website is free to use, and plaintiffs do not allege that they were required to use it to receive medical services.

### F. Count 7 – Larceny / Receipt of Stolen Property

Cal. Pen. Code § 496 governs civil larceny and the buying and selling of stolen property. It does not apply here for four reasons.

**First**, § 496 only allows recovery based on "actual damages." As explained above (Part II.E), Plaintiffs do not identify any real-world damages from Defendants' alleged conduct. *Tanner v. Acushnet Co.*, 2023 WL 8152104, at *10 (C.D. Cal. Nov. 20, 2023) (allegations that the defendant misappropriated personal information fail to plead "actual damages required for a civil claim under Cal. Penal Code § 496(c)").

**Second**, "the weight of authority holds that a plaintiff's 'personal information' does not constitute property" that can be stolen under California law. *Low*, 900 F. Supp. 2d at 1030; *People v. Dolbeer*, 29 Cal. Rptr. 573, 574-75 (Ct. App. 1963) ("mere information" is not property under Section 496). Accordingly, courts have dismissed similar claims in data tracking cases because "***mouse clicks and keystrokes are not 'property'*** that could have been stolen under Cal. Penal Code § 496." *E.g.*, *Tanner*, 2023 WL 8152104, at *9.

**Third**, Plaintiffs cannot plausibly allege that the data at issue was *stolen*. Again, Plaintiffs claim they willingly provided the information to Defendants for a legitimate and lawful purpose: the provision of healthcare services. Plaintiffs now claim that the information was taken by "false pretenses" because they did not consent to sharing their information with Meta. Compl. ¶¶ 369-70. But that is not enough:

---

DEFENDANTS' MOTION TO DISMISS                                3:24-cv-00237-LL-BLM

> [N]ot all commercial or consumer disputes alleging that a defendant obtained money or property through fraud, misrepresentation, or breach of a contractual promise will amount to a theft. To prove theft, a plaintiff must establish criminal intent on the part of the defendant beyond mere proof of nonperformance or actual falsity.

*Siry Inv., L.P. v. Farkhondehpour*, 513 P.3d 166, 184 (Cal. 2022). Accordingly, "a cause of action for civil theft cannot lie where a plaintiff receives legitimate services" in exchange for the property at issue. *Alvarez v. Adtalem Educ. Grp., Inc.*, 2019 WL 13065378, at *5 (N.D. Cal. Dec. 16, 2019). Here, Plaintiffs allege they provided information to SDFC in connection with "receiving healthcare services." Compl. ¶ 350. Even if it were true that Defendants made "misrepresentations" about their data practices (which they did not—everything was clearly disclosed in SDFC's Privacy Policy), Plaintiffs do not allege Defendants' "entire business or enterprise … is objectively a scam without any legitimate services provided. The allegations therefore do not give rise to a claim of civil theft." *Alvarez*, 2019 WL 13065378, at *5.

### G. Count 8 – Unjust Enrichment

Plaintiffs' unjust enrichment claim fails for four independent reasons. ***First***, California does not recognize a separate cause of action for unjust enrichment. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *Baiul-Farina v. Lemire*, 804 F. App'x 533, 537 (9th Cir. 2020) ("[U]njust enrichment is not a cause of action under California law." (cleaned up)).

***Second***, while courts sometimes construe "unjust enrichment" claims as claims for equitable restitution, such relief is only available where remedies at law would be inadequate. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 260 (2011). Here, Plaintiffs' other causes of action for money damages, if successful, provide adequate remedies at law. Plaintiffs do not even attempt to plead otherwise. *See In re Apple Processor Litig.*, 2022 WL 2064975, at *11-12 (N.D. Cal. June 8, 2022) (dismissing unjust enrichment claim for failure to plead that damages are an inadequate remedy).

***Third***, Plaintiffs fail to plead that Defendants earned or retained any profits

DEFENDANTS' MOTION TO DISMISS                    3:24-cv-00237-LL-BLM

through the alleged conduct, much less that they did so unjustly. Plaintiffs make general allegations that Defendants used the Meta Pixel with a *motive* to improve "profits" or "revenues" by better understanding their customer base, but say nothing about whether or to what extent Defendants successfully did so. Compl. ¶¶ 31, 61, 202, 306. And, even if they could, any such profits would be attenuated from the alleged wrongful conduct. Plaintiffs do not allege it was unlawful for Defendants to use patient information for analytics or marketing. Rather, they allege Defendants improperly shared information with Meta. They do not allege, in even a conclusory way, that Defendants received a dime from Meta for using the Meta Pixel.

**Fourth**, Plaintiffs fail to allege they "retain a stake in the profits garnered from" Defendants' alleged collection, use, and disclosure of "valuable medical information." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020); *see also In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 834-35 (N.D. Cal. 2020) (rejecting unjust enrichment claim based on profits allegedly garnered from plaintiffs' "'personal information' that Defendants[] allegedly used"). Absent a retained stake, there can be no unjust enrichment.

## CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiffs' claims without leave to amend.

DEFENDANTS' MOTION TO DISMISS                                    3:24-cv-00237-LL-BLM

Dated: May 13, 2024

*/s/ Brenda R. Sharton*
Brenda R. Sharton (*admitted pro hac vice*)
**DECHERT LLP**
One International Place, 40th Floor
100 Oliver Street
Boston, MA 02110-2605
Telephone:  (617) 728-7100
Facsimile:  (617) 275-8374
brenda.sharton@dechert.com

Benjamin M. Sadun (SBN 287533)
**DECHERT LLP**
US Bank Tower
633 West 5th Street, Suite 4900
Los Angeles, CA
Telephone:  (213) 808-5700
Facsimile:  (213) 808-5760
benjamin.sadun@dechert.com

Theodore E. Yale (*admitted pro hac vice*)
**DECHERT LLP**
2929 Arch Street
Philadelphia, PA 19104
Telephone:  (215) 994-4000
Facsimile:  (215) 655-2455
theodore.yale@dechert.com

*Attorneys for Defendants*

DEFENDANTS' MOTION TO DISMISS                                    3:24-cv-00237-LL-BLM