Matthew J. Langley, (SBN 342846)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
t: 312-576-3024
matt@almeidalawgroup.com

John R. Parker, Jr. (SBN 257761)
jrparker@almeidalawgroup.com
**ALMEIDA LAW GROUP LLC**
3550 Watt Avenue, Suite 140
Sacramento, California 95608
t: 916-616-2936

*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| B.W. and JANE DOE, *individually and on behalf of all others similarly situated*, and<br><br>*Plaintiffs*,<br><br>v.<br><br>SAN DIEGO FERTILITY CENTER MEDICAL GROUP, INC., and IVY FERTILITY SERVICES, LLC.<br><br>*Defendants*. | Case No. 3:24-cv-00237-LL-BLM<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Hearing Date: June 17, 2024<br>Judge: Hon. Linda Lopez<br>Action Filed: February 5, 2024 |

# TABLE OF CONTENTS


INTRODUCTION ........ 6

FACTUAL ALLEGATIONS ........ 8

FEDERAL RULE 12(B)(6) STANDARD ........ 9

ARGUMENT ........ 10

I. PLAINTIFF JANE DOE'S CLAIMS ARE TIMELY BECAUSE THE STATUTES OF LIMITATIONS WERE TOLLED BY THE DELAYED DISCOVERY RULE ........ 10

II. PLAINTIFFS STATE A VIABLE CLAIM UNDER 18 U.S.C. § 2511(1) OF THEECPA ........ 11

A. The Tortious and Criminal Disclosure of Plaintiffs' Private Information was Separate and Independent from the Interception ........ 12

B. Plaintiffs' Communications Were Intercepted "During Transmission." ........ 15

C. Plaintiffs Allege that Defendants Intercepted the Contents of the Communications. ........ 16

III. PLAINTIFFS STATE VIABLE CLAIMS UNDER CAL. PEN. CODE § 631(A) OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA") ........ 18

IV. PLAINTIFFS STATE A VIABLE CLAIM UNDER THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT ("CMIA") ... 20

A. Defendants Disclosed Plaintiffs' Medical Information to Meta. ........ 21

B. Plaintiffs' Individually Identifiable Information Was Disclosed. ........ 22

C. Meta Viewed Plaintiffs' Private Information. ........ 23

V. PLAINTIFFS STATE A VIABLE CLAIM FOR INVASION OF PRIVACY ........ 24

A. Plaintiffs Did Not Consent to Defendants' Disclosure of Their Private Fertility Medical Information To Third Parties. ..........24

B. Plaintiffs Had a Reasonable Expectation of Privacy In Their Private Information. ..........25

C. Plaintiffs Allege a "Highly Offensive" Intrusion Into Their Medical Privacy..........26

VI. PLAINTIFFS STATE A VIABLE CLAIM FOR BREACH OF IMPLIED CONTRACT ..........27

VII. PLAINTIFFS STATE A VIABLE LARCENY CLAIM ..........28

VIII. PLAINTIFFS STATE A VIABLE CLAIM FOR UNJUST ENRICHMENT ..........29

IX. CONCLUSION. ..........30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ambry*,
567 F.Supp.3d 1130 (S.D Cal. 2021) ....................24, 25

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ....................7, 11, 13

*B.K. v. Eisenhower Med. Ctr.*,
2024 WL 878100 (C.D. Cal. Feb. 29, 2024) ....................14, 22

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023) ....................11

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021)....................16, 17

*Brown v. Google LLC*,
525 F. Supp. 3d at 1078–79 ....................26

*Kurowski v. Rush Sys. For Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023)....................14

*Calhoun v. Google LLC*
526 F.Supp.3d 605 (N.D. Cal. 2021)....................26, 29

*Cousin v. Sharp Healthcare*,
2023 WL 8007350 (S.D. Cal. Nov. 17, 2023)....................16, 21, 23

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ....................16, 19, 21

*Doe v. Fullstory, Inc.*,
2024 WL 188101 (N.D. Cal. Jan. 17, 2024)....................29

*Doe v. Kaiser Foundation Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)....................14

*Doe v. Meta Platforms, Inc.*,
2023 WL 5837443 (N.D. Cal. Sept. 7, 2023)....................16

*E.H. v. Meta Platforms, Inc.*,
2024 WL 557728 (N.D. Cal. Feb. 12, 2024) .......... 7

*In re Experian Data Breach Litigation*,
2016 WL 7973595 (C.D. Cal. Dec. 29, 2016) .......... 28

*In re Facebook Privacy Litigation*,
572 F. App'x 494 (9th Cir. 2014) .......... 28

*In re Facebook Tracking*,
956 F.3d 607 .......... *passim*

*In re Facebook*,
956 F.3d at 601 .......... *passim*

*In re Google Inc. Cookie Placement Cons. Priv. Litig.*
806 F.3d 125 (3d Cir. 2015) .......... 26

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) .......... 29

*In re Google RTB Consumer Priv. Litig*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 9, 25

*Griffith v. Tiktok, Inc.*,
No. 5:23-cv-00964-SB-E, 2023 WL 7107262 (C.D. Cal. Oct. 6, 2023) .......... 29

*In re Grp. Health Plan Litig.*,
2023 WL 8850243 (D. Minn. Dec. 21, 2023) .......... 8, 13

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 17

*Hartley v. Univ. of Chicago Med. Ctr.*,
2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) .......... 8, 13

*Johnson v. Blue Nile, Inc.*,
2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) .......... 17

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .......... 8, 13

*Knappenberger v. City of Phoenix*,
566 F.3d 936 (9th Cir. 2009) ....................................................................30

*Kurowski v. Rush System for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023)......................................14, 24

*Lyons v. Michael & Assocs.*,
824 F.3d 1169 (9th Cir. 2016) ..................................................................10

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ..............................................................9, 20

*Mekhail v. N. Mem'l Health Care*,
2024 WL 1332260 (D. Minn. Mar. 28, 2024) ..........................................13

*In Re Meta Healthcare Pixel Litig.*,
2024 WL 333883 (N.D. Cal. Jan. 29, 2024)................................................8

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)...............................................*passim*

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) ......................................................13

*Planned Parenthood Federation of America, Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ....................................................................13

*R.C. v. Walgreen Co.*,
2024 WL 2263395 (C.D. Cal. May 9, 2024)............................7, 13, 14, 26

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ..........................................20

*Smith v. Facebook*
262 F. Supp. 3d 943 (N.D. Cal. 2017)........................................................21

*Stasi v. Inmediata Health Group Corp*
501 F.Supp.3d 898. (S.D. Cal. 2020) ..............................................24, 25

*Valenzuela v. Super Bright LEDs Inc*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ..........................................16

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954 (9th Cir. 2010) ....................................................................10

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 17

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 7, 17

**Other Federal Cases**

*B.K. v. Eisenhower Med. Ctr.*,
Case No. 5:23-cv-02092, Dkt. 30 (Mar. 14, 2024) (attached hereto as Exhibit A) .......... 14

**Federal Statutes**

18 U.S.C.
§ 2511(1) OF THE ECPA .......... 11, 12

42 U.S.C.
§ 1320d-6 .......... 13

CMIA .......... *passim*

ECPA .......... *passim*

Electronic Communication Privacy Act .......... 11

Health Insurance Portability and Accountability Act of 1996 .......... 12

HIPAA .......... *passim*

MEDICAL INFORMATION ACT .......... 20

RICO .......... 13

**California Statutes**

Cal. Civ. Code
§§ 56.10, 56.101 .......... 20

California Penal Code
§ 631(a) fourth clause .......... 18, 19

**Other Authorities**

California Constitution .......... 24

Federal Rule of Civil Procedure 12(b)(6)........................................................9

## INTRODUCTION

By their Motion to Dismiss Plaintiffs' Class Action Complaint, San Diego Fertility Medical Group, Inc. ("SDFC") and Ivy Fertility Services, LLC ("Ivy" together with SDFC, "Defendants") do ***not*** deny using tracking tools—including the Meta Pixel and Conversions API—to collect their patients' information as they interact with Defendants' Web Properties and to disclose this information to third parties including Meta.

Instead, to avoid judicial scrutiny, Defendants argue that the information they disclosed was merely "browsing information" and not protected health information. But Defendants' attempts to evade responsibility miss their mark. Defendants chose to implement the Pixels, which intercepted their patients' Personal Health Information ("PHI") and personally identifiable information ("PII" and with PHI, "Private Information") with the explicit intent to disclose that information to third-parties, including Meta, without Plaintiffs' consent and in violation of the law.

For example, as Plaintiffs B.W. and Jane Doe allege in their Complaint, SDFC and Ivy intercepted and disclosed to Meta and other third parties protected Private Information including: Plaintiffs' searches regarding the testing and diagnosis for depression and infertility, information regarding the symptoms and treatment for uterine polyps, information regarding the procedure for freezing eggs, the payment of bills for various fertility procedures and the making of online appointments for fertility treatments.[1] ¶¶ 245, 259. These allegations are more than sufficient to establish that Defendants unlawfully disclosed the contents of Plaintiffs' communications,

[1] All paragraph citations throughout this Opposition are to Plaintiff's Class Action Complaint, ECF No. 1 ("Complaint").

including their Private Information. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (distinguishing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) and, in a case with similar allegations, holding that "a URL disclosing a search term or similar communication" were the contents of a communication.")

Defendants' additional arguments fair no better. As alleged, the interceptions were made during the transmission of Plaintiffs' information to Defendants. The separate and distinct disclosure of Plaintiffs' information to Meta was made simultaneous to the interception and with the tortious and criminal intent to violate HIPAA and invade Plaintiffs' privacy. Defendants not only directly intercepted and disclosed Plaintiffs' communications, but they also aided and abetted Meta's unlawful interception by intentionally implementing the tracking Pixel knowing that Meta would intercept Plaintiffs' PHI and use it to sell direct advertising to other third parties. Defendants failed to disclose any of this to Plaintiffs, who had not consented to the disclosure of their information and had no idea that their information was being disclosed by the use of this invisible technology.

Finally, Defendants' Motion to Dismiss ignores recent decisions of courts in the Ninth Circuit and around the country that have sustained similar pixel tracking complaints at the motion to dismiss stage. *See, e.g., R.C. v. Walgreen Co.*, 2024 WL 2263395 (C.D. Cal. May 9, 2024) ("*Walgreen*") (denying motion to dismiss ECPA, CIPA, invasion of privacy and other claims when defendant shared patient health information via the Meta Pixel on its website); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) ("*Desert Care*") (denying motion to dismiss ECPA, CMIA, and invasion of privacy claims); *E.H. v. Meta Platforms, Inc.*, 2024 WL 557728, at *2-10 (N.D. Cal. Feb. 12, 2024) (denying motion to dismiss in its entirety);

*In Re Meta Healthcare Pixel Litig.*, 2024 WL 333883, at *3-7 (N.D. Cal. Jan. 29, 2024) (denying motion to dismiss constitutional privacy & intrusion upon seclusion as well as other claims); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *5-8, 11-12 & 15-18 (W.D.N.Y. Mar. 19, 2024) (denying motion to dismiss ECPA, unjust enrichment, and New York consumer law claims); *Hartley v. Univ. of Chicago Med. Ctr.*, 2024 WL 1886909, at *3 (N.D. Ill. Apr. 30, 2024) (denying motion to dismiss ECPA claim); *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *2-10 (D. Minn. Dec. 21, 2023) ("*Group Health*") (denying motion to dismiss invasion of privacy, breach of implied contract, unjust enrichment, negligence & ECPA causes of action). For these reasons, and others more fully set forth below, Defendants' motion to dismiss should be denied.

## <u>FACTUAL ALLEGATIONS</u>

Defendant Ivy is "an internationally recognized network of fertility clinics" and includes the clinics run by Defendant SDFC. ¶ 4. Defendant SDFC operates four fertility clinics, with three locations in California (in Del Mar, Mission Valley and Temecula) and one in New York City. ¶ 7. Defendants offer fertility treatments, including infertility testing and diagnosis, in-vitro fertilization ("IVF"), PGD-PGS gender selection, LGBT fertility, male infertility, egg freezing, and fertility preservation. ¶ 8. As part of the medical services they provide, Defendants own and operate websites for their hospitals (the "Web Properties"). ¶ 6. Defendants encourage their patients to use the Web Properties to share and search for PHI about their reproductive health. ¶ 10.

Plaintiff B.W. was a patient of SDFC and began using Defendants' Web Properties in September 2023. ¶ 244. Plaintiff B.W. used the Web Properties to communicate to Defendants about her medical conditions, including to

search for and provide information about depression, infertility, and uterine polyps or fibroids. ¶¶ 245. As a result of Defendants' unauthorized disclosures, Plaintiff B.W. received targeted advertisements on Facebook including ads for clinical trials related to endometriosis and fibroids, as well as depression. ¶ 247.

Plaintiff Jane Doe accessed and used Defendants' Web Properties starting in September 2017. ¶ 257. Jane Doe used Defendants' Web Properties to, among other things, share and research information about the medical procedure for egg freezing, make online appointments, and to pay for services she received from Defendants. ¶ 259. Plaintiff Jane Doe also received targeted advertisements on Facebook, including ads for fertility treatments. ¶ 262.

Defendants boldly proclaim to their patients in their "Privacy Policy" that they are "committed to respecting your privacy" and that they do "not share tracking information with unaffiliated companies, and [does] not allow other companies to place cookies on our Site." ¶¶ 11. However, unbeknownst to their patients, Defendants installed and configured the Pixel to collect Plaintiffs' and other users' Private Information, for the purpose of disclosing that information to Meta and other third parties, in violation of HIPAA and state common law. ¶¶ 18-19, 26-28, 82.

## FEDERAL RULE 12(b)(6) STANDARD

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is improper where the complaint pleads "enough facts to state a claim [for] relief that is plausible on its face." *In re Google RTB Consumer Priv. Litig*, 606 F. Supp. 3d 935, 942 (N.D. Cal. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire &*

*Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## ARGUMENT

### I. PLAINTIFF JANE DOE'S CLAIMS ARE TIMELY BECAUSE THE STATUTES OF LIMITATIONS WERE TOLLED BY THE DELAYED DISCOVERY RULE.

There is no dispute that Jane Doe's[2] claims are timely because the statutes of limitations on her claims were tolled as a result of Defendants' knowing and active concealment of their conduct as alleged in the Complaint. *See e.g.* ¶¶ 33, 275, 328. Defendants' arguments to the contrary (MTD at 3-5) fail because "a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

The Ninth Circuit has made it clear that, "[f]ederal law determines when the limitations period begins to run, and the general federal rule is that a limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lyons v. Michael & Assocs.*, 824 F.3d 1169, 1171 (9th Cir. 2016) (*quoting Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009).

As the Complaint states, "Plaintiffs did not know (and had no way of knowing) that their Private Information was intercepted and unlawfully disclosed because Defendants kept this information secret" and "Plaintiffs only discovered that their Private Information had been disclosed by Defendants, in January 2024." ¶ 275. Plaintiffs have alleged that Defendants embedded "undetectable tracking Facebook pixels" to surreptitiously share

---

[2] Defendants do not challenge the timeliness of Plaintiff B.W.'s claims as the interception and disclosure of her Private Information occurred well within the statute of limitations for all claims.

patients' private and protected communications with Facebook, and failed to disclose that they collected and disclosed that information with third parties. ¶¶ 16, 71, 143-144. This is more than sufficient, at this stage, to establish that Plaintiff Jane Doe's claims were tolled. *See Desert Care*, 2024 WL 1343305, at *5 (Holding that dismissal of Plaintiffs' claims as time-barred would be premature "where Plaintiffs contend that 'Defendants secretly incorporated the Meta Pixel into their Web Properties"); *see also Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1083 (S.D. Cal. 2023) (Holding that whether the "delayed discovery" rule tolled the statute of limitations "is a factual question the Court is not prepared to answer at this point.").[3]

## II. PLAINTIFFS STATE A VIABLE CLAIM UNDER 18 U.S.C. § 2511(1) OF THE ECPA.

Defendants' attempt to avoid liability under the Electronic Communication Privacy Act ("ECPA") by asserting that: 1) their conduct falls within the statute's party exception, 2) the communications were not intercepted "during transmission," and 3) Plaintiffs' communications were not "content." But in making these arguments, Defendants ignore the well-pleaded

---

[3] Defendants take issue with Plaintiff Jane Doe's use of a pseudonym to protect her privacy. However, as the Ninth Circuit has announced, "[i]n this circuit, we allow parties to use pseudonyms in the unusual case when nondisclosure of the party's identity is necessary ... to protect a person from harassment, injury, ridicule or personal embarrassment." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067–68 (9th Cir. 2000) (holding that the the district court abused its discretion in denying plaintiffs permission to proceed anonymously at this stage of the litigation). Here, Plaintiff Jane Doe's need to protect against the public disclosure of her most private medical information, information concerning her fertility and treatment of issues surrounding fertility, is sufficient to allow her to use a pseudonym. Moreover, undersigned counsel for Plaintiffs have disclosed Plaintiffs' full names and identities to Defendants and thus Defendants will suffer no prejudice.

Complaint allegations, cite case law that is inapposite to the allegations here, and contest factual issues not appropriately resolved at this stage of the case.

### A. The Tortious and Criminal Disclosure of Plaintiffs' Private Information was Separate and Independent from the Interception.

Defendants argue that the crime-tort exception does not apply because the interception was not separate and independent of the crime or tort." MTD at 6-7. Defendants misunderstand the Complaint's allegations. Plaintiffs allege that Defendants both intercepted ***and*** disclosed to Facebook Plaintiffs' Private Information. *See e.g.* ¶¶ 14-15. As many courts have concluded, these allegations of disclosure—independent and separate from the interception—when done with the purpose of committing a criminal and/or tortious act (that is, to invade Plaintiff's privacy and to violate the Health Insurance Portability and Accountability Act of 1996 ("HIPAA")) suffice to plausibly allege the crime-tort exception to the one-party exemption and in contravention of 18 U.S.C. § 2511(1) of the ECPA.

As Plaintiffs allege:

> In disclosing the content of Plaintiffs' and Class Members' communications, Defendants had a purpose that was tortious, criminal, and designed to violate state constitutional and statutory provisions, ***that is, to illegally disclose Plaintiffs' and Class Members' Private Information to Facebook*** (and other Pixel Information Recipients) in violation of HIPAA, including 42 U.S.C. § 1320d-6(a)(3), as well as the torts alleged below.

¶ 167 (emphasis added); *see also* ¶¶ 195, 303-305.

Plaintiffs plausibly allege that Defendants' disclosure of Plaintiffs' Private Information was separate and independent from its interception. *See, e.g.*, ¶¶ 14-15, 97, 128, 151-152, 165-167, 303-305. These allegations are consistent with the holdings of district courts in this Circuit and throughout the

country that have denied motions to dismiss ECPA claims based on similar allegations against healthcare entities. *See, e.g.*, *Walgreen*, 2024 WL 2263395 at *15-16 (recognizing that "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording or interception itself" and holding that crime-tort exception applied because communications were intercepted with intent to commit the tort of invasion of privacy) (emphasis in original); *Desert Care*, 2024 WL 1343305, at *6 (holding one-party exemption to ECPA did not apply because "[d]efendants disclosed these communications to Meta in violation of various state tort claims and state and federal laws"); *Kane*, 2024 WL 1178340 at *7 (holding that "plaintiffs have plausibly alleged that Defendant's purpose was to commit an act that is punishable as a crime under 42 U.S.C. § 1320d-6"); *Group Health*, 2023 WL 8850243, at *8 (holding that viable invasion of privacy and state statutory claims were sufficient to apply the crime-tort exception); *Mekhail v. N. Mem'l Health Care*, 2024 WL 1332260 at *5 (D. Minn. Mar. 28, 2024) (denying motion to dismiss ECPA claim and holding that plaintiff's "allegations sufficiently plead an interception made with the purpose of violating one or more laws, independent from the act of interception itself"); *Hartley*, 2024 WL 1886909, at *3 (holding that plaintiff "alleged sufficient information that was disclosed to Meta" sufficient to defeat motion to dismiss ECPA claim).

The cases Defendants cite to support their argument are inapposite. *See* MTD at 6. In *Planned Parenthood Federation of America, Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022), plaintiffs did not allege disclosure as the criminal or tortious act, instead the court held that making the recordings alone could not support both RICO and ECPA claims. Similarly in *Pena v.*

*GameStop, Inc.*, 670 F. Supp. 3d 1112, 1119-20 (S.D. Cal. 2023) there was also no allegation of disclosure, only the interception. In *Doe v. Kaiser Foundation Health Plan, Inc*., 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024), unlike here, there was no allegation that defendant knew and/or approved of third parties collecting and/or using information for their own purposes.

Defendants also cite to Judge Bernal's dismissal of *B.K. v. Eisenhower Med. Ctr.*, 2024 WL 878100, at *5 (C.D. Cal. Feb. 29, 2024). However, Defendants fail to mention that Judge Bernal granted plaintiffs' motion to reconsider in *Eisenhower* and allowed plaintiffs to file an amended complaint. *See B.K. v. Eisenhower Med. Ctr.,* Case No. 5:23-cv-02092, Dkt. 30 (Mar. 14, 2024) (attached hereto as Exhibit A). Relevant to this Court's ECPA analysis, the court in *Eisenhower* explained that Judge Kennelly's analysis of the crime-tort exception in *Kurowski v. Rush System for Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*"),[4] was, while not controlling, "instructive." *Id*. Specifically, Judge Bernal found that "[w]hile the *Kurowski* court did not specifically evaluate the well-pled HIPAA claim in the context of whether it constitutes independently illegal or actionable conduct such that the crime-tort exception would apply, the Court interprets its eventual acceptance of the HIPAA claim in *Kurowski III* to indicate it does." *Id*.[5]

In a last-ditch effort to evade the crime-tort exception, Defendants seek

[4] Defendants also cite to the earlier *Kurowski* decision without citing to that court's granting of the motion to reconsider. MTD at 7; *c.f. Kurowski v. Rush Sys. For Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023) *with Kurowski v. Rush Sys. For Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023).

[5] Defendants also fail to cite to Judge Bernal's decision in *Walgreen*, 2024 WL 2263395 at *15-16, decided after the granting of the motion to reconsider in *Eisenhower*, wherein the court denied defendant's motion to dismiss plaintiffs' ECPA claims and applied the crime-tort exception.

shelter under the notion that because "acting for commercial gain" is not illegal they may freely collect and disclose their users' Private Information without consent. MTD at 7. But Defendants' profit motive has no bearing on the crime-tort analysis because the "existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 797 ("the existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose")(quotation omitted).

Because Plaintiffs allege the criminal and/or tortious disclosure of their PHI and PII was separate and independent from the interception of the information, the ECPA's crime-tort exception applies and Defendants' motion to dismiss should be denied.

### B. Plaintiffs' Communications Were Intercepted "During Transmission."

Defendants' argument that Plaintiffs' communications were not "acquired during transmission" also fails. MTD at 7-8. Defendants' contention that there were two distinct communications contradicts Plaintiffs' allegations that each communication is intercepted and simultaneously sent to third parties concurrent with the transmission. ¶ 120 ("This simultaneous secret transmission contains the original GET request sent to the host website, along with additional data that the Meta Pixel is configured to collect. This transmission is initiated by Facebook code and concurrent with the communications with the host website."); *see also* ¶¶ 16, 80, 119, 328. None of the examples Defendants cite from the Complaint support their argument. MTD at 8. Defendants' first example refers only to Meta's Conversions API and not a transmission intercepted by the Pixel and the second is a reference to when a user fills out the appointment form, clicks the "submit message"

button, and the information that is then captured instantaneously when transmitted - but not before the user actually fills out the form. *See* ¶¶ 67, 102.

Defendants' argument is also unsupported by the law. Defendants rely on *Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021), which did ***not*** hold that an entity is incapable of interception in transit through the Pixel, but rather considered only whether the interception facilitates or is incidental to the transmission (a point not challenged here) and, regardless, the court there ***denied*** defendant's motion to dismiss the ECPA claim. *Cf. In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795 (finding that plaintiffs "appear[ed] likely to succeed" on the "interception" element where they alleged "that Meta receives information through the Pixel"); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1131 (S.D. Cal. 2023) ("*Cousin I*") (holding that arguments as to what constitutes "in transit" are best left for resolution at the summary judgment stage); *see also Valenzuela v. Super Bright LEDs Inc*, 2023 WL 8424472, at *10 (C.D. Cal. Nov. 27, 2023) (finding similar allegations sufficient to allege "in transit" communication).

### C. Plaintiffs Allege that Defendants Intercepted the Contents of the Communications.

The Ninth Circuit has recognized that intercepted URLs that disclose a user's search terms and divulge their "personal interests, queries, and habits" are "contents" of communications. *Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 607 (9th Cir. 2020) ("*Facebook Tracking*"); *see also Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *7-8 (N.D. Cal. Sept. 7, 2023) (log-in buttons and descriptive URLs constitute "contents"); *Cousin v. Sharp Healthcare*, 2023 WL 8007350, at *5 (S.D. Cal. Nov. 17, 2023) ("*Cousin II*") ("Plaintiffs allege that their data included personal search queries—such as specialty healthcare providers and treatments for medical

conditions—and therefore plausibly conveyed content: their PHI."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795 ("descriptive URLs are 'contents' within the meaning of the statute") (cleaned up).

Here, Defendants disclose users' every click or activity on their Web Properties to Meta, including URLs of pages visited, search queries seeking medical information related to Plaintiffs' fertility treatments, medical information entered into forms, and medical appointment details. *See* ¶¶ 84, 97, 121, 245, 259-260. Accordingly, this data constitutes content because the data collected by Defendants and transmitted to third parties includes the Plaintiffs' personal health information revealing a substantive message about Plaintiffs' health concerns, including the specific fertility treatments the Plaintiffs received from Defendants. *See Facebook Tracking*, 956 F.3d at 605 (finding browsing histories constitute "content"); *Brown*, 525 F. Supp. 3d at 1072-73 (holding users' specific searches constitute "content"); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) (holding URLs that reproduce a person's personal queries are "contents").

Defendants' cited cases actually support Plaintiffs' arguments. MTD at 9; *see In re Zynga Privacy Litig.*, 750 F.3d 1098, 1109 (9th Cir. 2014) ("divulging a URL containing [a] search term [or similar communication] to a third party could amount to a disclosure of the contents of a communication"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021) (finding routine identifiers which did not include internal, user-specific materials of a message were not "content"); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *3 (N.D. Cal. Apr. 8, 2021) (finding interception of only IP addresses, locations, browser types, and operating systems were not "content"). Because the information intercepted and disclosed by Defendants reveal Plaintiffs' and Class Members' actual health conditions and treatments,

that information is content and Defendants' motion should be dismissed.

## III. PLAINTIFFS STATE VIABLE CLAIMS UNDER CAL. PEN. CODE § 631(A) OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA").

Plaintiffs allege that Defendants violated CIPA § 631(a) in three ways. *First*, Defendants intentionally embedded and customized Facebook's tracking technology on its Web Properties, thereby disclosing Plaintiffs' Private Information to Meta. ¶¶ 325, 327. *Second*, by activating the Pixel, Defendants enabled Meta to intercept Plaintiffs' communications involving Private Information. ¶ 326. *Third*, Defendants enabled Meta to intercept confidential and sensitive communications for its own commercial gain and website analytics. ¶ 323.

In response, Defendants make the same failed arguments that they made in attempting to dismiss Plaintiffs' ECPA claims. MTD at 10-14. Specifically, Defendants argue that they are exempt from liability because they were a party to the communication. *Id.* at 10, But, as explained above, because Defendants intercepted the communications at issue with the purpose of disclosing them in violation of HIPAA and common law, the crime-tort exception applies. *See In re Facebook Tracking*, 956 F.3d 607 ("[C]ourts perform the same analysis for both the [ECPA] and CIPA regarding the party exemption.") Defendants' arguments that the CIPA claim should be dismissed because the communications were neither intercepted in transit nor contents of the communications (MTD at 13-14) also fail. As explained above, in response to the identical arguments Defendants made regarding Plaintiffs' ECPA claim, the contents of Plaintiffs' communications, *i.e.*, their PHI, were intercepted in transmission.

Defendants also make additional arguments regarding the fourth clause of California Penal Code § 631(a). This subsection imposes liability on anyone

who "aids, agrees with, employs, or conspires with" someone who violates the previous three clauses of California Penal Code § 631(a). Though Defendants focus only on whether Plaintiffs sufficiently alleged "aiding," this prong of the statute prescribes a much broader scope of conduct. In their Complaint, Plaintiffs describe how Defendants configured their Web Properties to allow Facebook to intercept and track user activities through the Meta Pixel and that Meta, through the use of the Pixel, willfully and without consent, read or attempted to learn the contents or meaning of Plaintiffs' electronic communications. *See e.g.* ¶¶ 323-327. This is enough to sufficiently plead that Defendants' "either aided, agreed, employed, or conspired with Meta in the alleged interception of their information and data without their consent." *See Cousin I*, 681 F. Supp. 3d at 1130 (denying motion to dismiss CIPA claim in a Meta Pixel case).

Defendants' contentions that (1) they should not be held liable for aiding Meta's interception of Plaintiffs' communications because there was no independent violation by Meta or (2) that Meta did not use the communication for its own purposes or even that (3) Meta had no intent to intercept PHI, are each belied by the Complaint's allegations. MTD at 11-13. As the Complaint explains, after intercepting Plaintiffs' information through the Pixel embedded by Defendants, Meta separately disclosed Plaintiffs' PHI to third parties for its own purposes, that is, to advertisers who pay Meta to send targeted advertising. *See e.g.* ¶¶ 31, 134-135, 150, 210. As Plaintiffs allege, "[t]he Private Information disclosed via the Pixel allows Facebook to know that a specific User is seeking confidential medical care and the type of medical care being sought. Facebook then uses that information to sell advertising to Defendants and other advertisers and/or sells that information to marketers who will online target Plaintiffs and Class members." ¶ 128. Plaintiffs themselves allege they

have received such advertisements. ¶¶ 247, 262. As to Meta's intent, Meta's instruction to Defendants not to share PHI without the authorization and consent of Plaintiffs and Class Members here does nothing to minimize or call into question Meta's intent to violate CIPA and the rights of Plaintiffs and Class Members. Defendants at best raise a purely factual question that cannot be resolved on a motion to dismiss. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (in deciding a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party.").

The Complaint's allegations here are functionally the same as those against the defendants in *In re Facebook, Inc.* and *Revitch*, where the third parties under a CIPA "aid and abet" theory captured data and then used the data for their own benefit by reselling it. *See In re Facebook*, 956 F.3d at 601; *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019). Here, Plaintiffs have pleaded precisely and unambiguously that Meta knowingly intercepted and used Plaintiffs' data, without consent, to sell advertising. Defendants motion to dismiss the CIPA claim should be denied.

## IV. PLAINTIFFS STATE A VIABLE CLAIM UNDER THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT ("CMIA").

CMIA provides that "no provider of health care shall disclose medical information regarding a patient of the provider of health care without first obtaining an authorization." Cal. Civ. Code §§ 56.10, 56.101 (cleaned up). Defendants incorrectly argue that Plaintiffs do not allege that (1) their medical information was transmitted or (2) anyone viewed or accessed it. But Plaintiffs allege they were patients who had their medical information disclosed to a third party via Defendants' use of the Pixel; that the third party accessed and read that medical information; and that the third party used the medical

information for its own purposes and pecuniary gain. Thus, Plaintiffs state a viable claim against Defendants under the CMIA.

### A. Defendants Disclosed Plaintiffs' Medical Information to Meta.

Plaintiffs allege the Pixel collects and transmits to Meta medical information, *inter alia*, "(i) medical reproductive and fertility services and treatments sought; (ii) patient status; (iii) scheduling of appointments; (iv) accessing and viewing the bill page; (v) the text of URLs visited by the User; (vi) User's email address and phone number and (vii) other information that qualifies as PII and PHI under federal and state laws." ¶ 29. Each Plaintiff alleges that information such as treatment sought, appointment type, and physician selected is transmitted to Meta with personally identifying information. ¶¶ 252, 270. Such information discloses particularities about Plaintiffs' fertility-related medical treatment.

Defendants rely on *Smith v. Facebook* 262 F. Supp. 3d 943 (N.D. Cal. 2017), *Cousin I*, 681 F. Supp. 3d 1117 (which relied on *Smith*), and earlier cases informed by the developing jurisprudence regarding Pixel tracking and its privacy implications. MTD at 14-15. These cases are all distinguishable, because they are all founded upon a mistaken interpretation of CMIA's application to Pixel cases. As Judge Orrick for the Central District Court of California noted in denying Meta's motion to dismiss in *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 792, the *Smith* decision is inapposite. *Smith* concerned user browsing and the URLs at issue did not "relate[ ] specifically to Plaintiffs' health." *Id.* Unlike the facts in *Smith*, the Pixel here captures ***information that connects a particular user to a particular healthcare provider***—*i.e.*, patient status—which is information HIPAA protects. *See Cousin II*, 2023 WL 8007350 at *4 (denying motion to dismiss

CMIA claim where the Meta Pixel was installed on a healthcare company's public-facing website, and noting, "[i]t is clear that the California Civil Code's definition for information protected by CMIA largely tracks HIPAA's definition of PHI.") (emphasis added).

Moreover, Defendants' reliance on *B.K. v. Eisenhower Med. Ctr.* is again misplaced. MTD at 17. In the Court's decision dismissing a CMIA claim with leave to amend, the Court observed that the plaintiffs there failed to allege medical information was transmitted to Meta. *See B.K. v. Eisenhower Med. Ctr.*, 2024 WL 878100, at *4. Here, however, Defendants disclosed, in addition to information about Plaintiff's specific medical conditions and treatments, Plaintiffs' first and last name, birth date, email address, phone number, reason for visiting, and the fact that they were making appointments for specific medical conditions. ¶¶ 252, 270.

**B. Plaintiffs' Individually Identifiable Information Was Disclosed.**

Plaintiffs allege that Defendants disclosed, without Plaintiffs' consent, their first and last name, birth date, email address, phone number, reason for visiting, identifying cookies, Facebook ID, and IP address. ¶¶ 252, 270. As the Complaint explains, "[t]his disclosed PHI and PII allows Meta to know that a specific patient is seeking confidential medical care and the type of medical care being sought, and in addition to permitting Defendants to target those persons with advertisements, Meta also then sells that information to marketers who will online target Plaintiffs and Class Members." ¶ 151. This is sufficiently personally-identifying information that it constitutes a breach of CMIA for Plaintiffs here—Meta has the name and email address of each of its users and can match that information with the disclosed Facebook ID.[6] As a

[6] Notably, Defendants do not contend that Plaintiff Jane Doe's individually-

result, Plaintiffs were immediately bombarded with fertility services-related advertisements and solicitation after using Defendants' website to seek fertility medical treatment. ¶ 247, 262-265.

**C. Meta Viewed Plaintiffs' Private Information.**

Plaintiffs allege their Private Information was accessed and viewed once disclosed to Meta, stating a claim for violations under the CMIA. In *Cousin II,* 2023 WL 8007350, the court denied the defendant's motion to dismiss a CMIA claim, finding allegations that Meta views Private Information obtained via the Pixel, coupled with an alleged understanding as to how Meta uses the Private Information to target advertising, were sufficiently plausible to infer that the plaintiff's information was "viewed or otherwise accessed" as the CMIA contemplates. *Id.* at *4. Plaintiffs allege that, after it intercepts and collects Private Information, "Facebook processes it, analyzes it, and assimilates it into datasets[.]" ¶ 125. Plaintiffs further allege that Meta "uses this data and analysis for its own commercial purposes, including to improve its platform and better understand the individuals that make up the audiences that its clients (advertisers) pay Facebook to target with ads" ¶ 135. Thus, just as in *Cousin II*, Plaintiffs allege both that Meta ***accessed*** the Personal Information and that Facebook uses Plaintiffs' Personal Information gathered through the Pixel for its own purposes and pecuniary gain. FAC ¶¶ 125, 135.

To require more would put the burden on Plaintiffs to describe Defendants' and Meta's internal technical systems without the benefit of discovery. *See*, *e.g.*, *Regents of Univ. of California*, 672 F.Supp.3d 813, 819 (N.D. Cal. 2023) ("To require more would place the burden on her to describe UC Regents' technical systems without the benefit of discovery."); *Cousin II*,

---

identifiable information was not disclosed—but Plaintiffs have pleaded that *both* Plaintiffs' individually-identifiable information was disclosed as set forth here and in the Complaint.

at *4 (leaving for another day whether Meta could view information and the impact of Meta's algorithm for a CMIA analysis). Accordingly, Defendants' motion to dismiss Plaintiffs' CMIA claim should be denied.

## V. PLAINTIFFS STATE A VIABLE CLAIM FOR INVASION OF PRIVACY.

Plaintiffs state claims for invasion of privacy under the California Constitution and for common law intrusion upon seclusion.[7] Courts consider these claims together, asking whether "(i) there exists a reasonable expectation of privacy and (ii) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601, citing *Hernandez v. Hillsides, Inc.* (2009) 47 Cal.4th 272, 287.) Here, the Complaint satisfied both factors.

### A. Plaintiffs Did Not Consent to Defendants' Disclosure of Their Private Fertility Medical Information To Third Parties.

Defendants tortuously interpret the Complaint to read that Plaintiffs understood and allowed their private medical information to be disclosed to Meta. They did not—Plaintiffs did not expect or authorize the disclosure of their private medical information to third parties, based upon their reasonable expectation of privacy and confidentiality in their communications with Defendants. ¶¶ 130, 205. And contrary to Defendants' misplaced reliance on *Kurowski*, which subsequent reconsideration motion is discussed above, recent cases in this district have found such allegations to be sufficient. *See In re Ambry*, 567 F.Supp.3d 1130, 1143 (S.D Cal. 2021); *Stasi v. Inmediata Health Group Corp* 501 F.Supp.3d 898, 926. (S.D. Cal. 2020). As set forth below, both of these cases found an actionable invasion of privacy when medical information is disclosed without consent to third parties.

---

[7] Plaintiffs request leave to amend their constitutional claim for invasion of privacy to seek injunctive relief only.

### B. Plaintiffs Had a Reasonable Expectation of Privacy In Their Private Information.

Courts evaluate whether "plaintiff[] would reasonably expect that [defendant] would use its access to [plaintiff's] personal information to share . . . it to third parties." *In re Google RTB Consumer* Priv. *Litig*. 606 F.Supp.3d 935, 946–47 (N.D. Cal. 2022). There can be no doubt that patients reasonably expect their medical information will remain confidential and will ***not*** be shared without consent. *See In re Ambry*, 567 F.Supp.3d at 1143 (finding even the negligent disclosure of medical information to constitute an invasion of privacy "because the disclosure of such information is more likely to constitute an 'egregious breach of the social norms' that is 'highly offensive'"); *Stasi*, 501 F.Supp.3d at 926. (explaining disclosure of medical information "negligently or otherwise . . . constitutes a serious invasion of privacy.")

Here, Plaintiffs adequately plead a reasonable expectation of privacy as to their Private Information. Plaintiffs allege that the Pixel disclosed, not standard browsing activity, but their personal healthcare information to Facebook without Plaintiffs' knowledge or consent. *E.g.*, ¶ 17. Plaintiffs specifically allege that they and Class Members had a reasonable expectation that Defendants would ***not*** act to embed the Pixel on its Website, which disclosed their Private Information to third parties like Meta for a purpose unrelated to patient care. ¶¶ 130, 205.

Plaintiffs' reasonable expectation was also based upon Defendants' "status as healthcare providers, Defendants' common law obligation to maintain the confidentiality of patients' PII/PHI" and state and federal laws protecting the confidential nature of the information at issue here. ¶ 191. Moreover, Plaintiffs' expectation was based upon Defendants' own privacy policy ¶ 11. Courts have recognized a reasonable expectation of privacy even in less sensitive forms of data where, as here, a defendant has set the

expectation that data would not be collected or disclosed. *See Facebook Tracking*, 956 F.3d at 602 (finding reasonable expectation of privacy in browsing history where Facebook "set an expectation" the data would not be collected); *Brown v. Google LLC*, 525 F. Supp. 3d at 1078–79 (finding a reasonable expectation of privacy where Google combined the unique identifier of the user it collects from websites and Google Cookies that it collects across the internet on the same user).

**C. Plaintiffs Allege a "Highly Offensive" Intrusion Into Their Medical Privacy.**

Whether Defendants' conduct is "highly offensive" turns "on the degree to which the intrusion is unacceptable as a matter of public policy." *Facebook Tracking*, 956 F.3d at 606. Courts are reluctant to determine the seriousness of a privacy intrusion at the pleading stage, leaving the question of fact for the jury under California law. *See In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d at 799 (citations and parentheticals omitted).

Moreover, Plaintiffs sufficiently allege that Defendants' disclosures of Plaintiffs' communications were "highly offensive." Medical information has long been protected, with both civil and criminal statutes reflecting a strong public policy against disclosure. *See*, *e.g.*, *Walgreen*, 2024 WL 2263395, at *9 (disclosure to Facebook that plaintiffs were purchasing sensitive non-prescription healthcare products related to specific health conditions was highly offensive). Defendants' surreptitious disclosure of Plaintiffs' Private Information via the Pixel violates these social norms, as well as Defendants' own policies. ¶ 11. *See*, *e.g.*, *Calhoun v. Google LLC* 526 F.Supp.3d 605, 631 (N.D. Cal. 2021) (surreptitious collection of data in contravention of representations to users is highly offensive); *In re Google Inc. Cookie Placement Cons. Priv. Litig.* 806 F.3d 125, 151 (3d Cir. 2015) (secret

collection of browser URL data was highly offensive).

Defendants present Plaintiffs' online activity as simply browsing public webpages with medical information on them. Not so. Again, as explained above, Plaintiffs' communications with Defendants, upon Defendants' invitation and encouragement, concerned private medical information, including information about the specific fertility treatments they received, making appointments, and paying bills for medical services. *See e.g.* ¶ 29. Accordingly, Defendants motion to dismiss Plaintiffs' Invasion of Privacy claims should denied.

## VI. PLAINTIFFS STATE A VIABLE CLAIM FOR BREACH OF IMPLIED CONTRACT.

Defendants contend that Plaintiffs' breach of implied contract claim should be dismissed because they have failed to adequately plead: damages, the terms of the implied contract, and consideration. MTD at 20-23. But Defendants ignore Plaintiffs' plenary allegations explaining that in exchange for using Defendants' services Defendants promised not to disclose Plaintiffs' Private Information to third parties without consent. *See*, *e.g.*, ¶ 143. Plaintiffs' allegations are sufficient to survive at the pleadings stage.

As the Complaint alleges, Plaintiffs provided their Private Information to Defendants based on the ongoing relationship between the parties and Defendants' own representations regarding their protection of Plaintiffs' information, and paid Defendants, at least in part, to keep that information secure and confidential. ¶¶ 349-352; *see also MarinHealth*, 2024 WL 217841 at *4 (denying motion to dismiss breach of implied contract claim where payment of services "was based in part, on MarinHealth's security promises").

Defendants' unauthorized interception and disclosure failed to compensate Plaintiffs and the Class for the part of their payment that was to

provide for the security of their Private Information as well as diminished the value of that Private Information, resulting in consequential damages. *See* ¶¶ 220-240; *see also In re Experian Data Breach Litigation,* 2016 WL 7973595, at *5 (C.D. Cal. Dec. 29, 2016) (loss of value of PII is a viable damages theory); *In re Facebook Privacy Litigation*, 572 F. App'x 494, 494 (9th Cir. 2014) (holding that plaintiffs' losing the sales value of their PII was sufficient to show damages for their breach of contract claims). Taken together, Plaintiffs' allegations demonstrate breach of implied contract.

## VII. PLAINTIFFS STATE A VIABLE LARCENY CLAIM.

To plausibly state a claim of theft by false pretenses, a plaintiff must allege that the defendant "made specific false representations to him and that plaintiff transferred his property 'in reliance on the representation.'" *MarinHealth*, 2024 WL 217841 at *5-6 (finding that plaintiff plausibly alleged a larceny claim against a healthcare provider in a similar pixel tracking case) (internal citations omitted). Defendants have reiterated to Plaintiffs that they would "protect" the privacy of Plaintiffs' medical information in their privacy policies, privacy practices, and online representations—upon which Plaintiffs relied. As such, Plaintiffs reasonably believed that their sensitive, Private Information would be safeguarded. *See, e.g.*, ¶¶ 143-150, 351.

In a similar pixel tracking case against a healthcare provider, the court held that a plaintiff plausibly pleaded larceny, where he identified a hospital's misrepresentations to protect privacy of medical information in its privacy policies. *See MarinHealth,* 2024 WL 217841, at *5-6 (denying dismissal of section 496 claim in a Meta Pixel action where plaintiff alleged reliance on defendant's affirmative representations that "it will not share Private Information for marketing purposes unless patients provide written permission," identifying "specific portions of [the] [p]rivacy [p]olicy

[defendant] violated"); *see also Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. March 17, 2021) (plaintiffs adequately alleged a statutory larceny claim under Section 496(a) where Google stole plaintiffs' personal information by "copying" it without consent); *Griffith v. Tiktok, Inc.*, No. 5:23-cv-00964-SB-E, 2023 WL 7107262, at *9-10 (C.D. Cal. Oct. 6, 2023) (declining to dismiss section 484 and 496 claims in a pixel tracking/data collection case). For the same reasons, Defendants' motion to dismiss Plaintiffs' larceny claim should be denied.

## VIII. PLAINTIFFS STATE A VIABLE CLAIM FOR UNJUST ENRICHMENT.

Plaintiffs allege that Defendants were unjustly enriched by receiving, disclosing, using, and retaining Plaintiffs' Private Information (and profits therefrom) without their consent. *See* ¶ 297. These allegations are sufficient, at this stage, state a claim for unjust enrichment. *See Facebook Tracking*, 956 F.3d 600 ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data" obtained without consent); *see also In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1159 (N.D. Cal. 2021) (sustaining unjust enrichment claim where company collected and stored data without consent, the retention of which is an unjust benefit).

First, Plaintiffs' unjust enrichment claim is pleaded in the alternative to its breach of implied contract claim and seeks an equitable restitution remedy, disgorgement of profits, that is otherwise unavailable to them at law. ¶ 375, 380-381. District courts in the Ninth Circuit regularly allow such unjust enrichment claims to proceed in similar healthcare pixel and data misuse cases. *See, e.g.*, *Doe v. Fullstory, Inc.*, 2024 WL 188101, *7, 16 (N.D. Cal. Jan. 17, 2024) (denying dismissal of unjust enrichment claim in a Meta Pixel action alleging misuse of PII and heath data); *MarinHealth*, 2024 WL 217841 at *5-

6 (same).

Moreover, Defendants' argument that Plaintiffs have not pleaded that Defendants profited from the disclosure of their information is belied by the Complaint itself—Plaintiffs have pleaded extensively that Defendants used Plaintiffs' valuable information to target advertisements—and advertisements are designed to increase, not decrease revenue, which is what Plaintiffs have pleaded. ¶¶ 26, 31, 206, 306, 376, 380. Plaintiffs need not plead that Defendants received money specifically from Facebook in order to survive a motion to dismiss. Accordingly, Plaintiffs have adequately alleged a claim for unjust enrichment with particularity that should not be dismissed. [8]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Honorable Court deny Defendant SDFC's and Defendant Ivy's Motion to Dismiss in its entirety, grant leave to amend to address any pleading deficiencies, and award all such other relief as equity and justice require.[9]

**DATED**: June 3, 2024

*/s/ Matthew J. Langley*
Matthew J. Langley
California Bar No. 342846
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
t: 312-576-3024
matt@almeidalawgroup.com

---

[8] Defendants' spurious argument that Plaintiffs must plead a retained "stake" in their information is belied by each of these cases that allowed a claim for unjust enrichment to proceed.

[9] Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

John R. Parker, Jr.
California Bar No. 257761
**ALMEIDA LAW GROUP LLC**
jrparker@almeidalawgroup.com
3550 Watt Avenue, Suite 140
Sacramento, California 95608
Tel: (916) 616-2936

Daniel Srourian
California Bar No. 285678
**SROURIAN LAW FIRM, P.C.**
3435 Wilshire Blvd. Suite 1710
Los Angeles, CA 90010
daniel@slfla.com

*Attorneys for Plaintiff & the Class*

## CERTIFICATE OF SERVICE

I, Matthew J. Langley, hereby certify that on June 3, 2024, I electronically served the foregoing on all counsel of record via the Court's CM/ECF system.

/s/ Matthew J. Langley

EXHIBIT A

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Tiara Avaness (SBN 343928)
*tavaness@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

**ALMEIDA LAW GROUP LLC**
John R. Parker, Jr. (SBN 257761)
*jrparker@almeidalawgroup.com*
3550 Watt Avenue, Suite 140
Sacramento, CA 95821
Tel: (916) 616-2936

*Counsel for Plaintiffs & the Proposed Classes*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

B.K., and N.Z., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

EISENHOWER MEDICAL CENTER,

Defendant.

Case No. 5:23-cv-02092-JGB-DTB

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF ORDER ON MOTION TO DISMISS [28] OR IN THE ALTERNATIVE FOR LEAVE TO AMEND**

**Hearing Information:**
Date: April 15, 2024
Time: 9:00 a.m.
Courtroom: 1

Hon. Jesus G. Bernal



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

Case 5:23-cv-02092-JGB-DTB Document 30 Filed 03/14/24 Page 2 of 12 Page ID #:296

**TO THE HONORABLE COURT AND TO DEFENDANT AND THEIR COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on April 15, 2024 at 9:00 a.m., in Courtroom 1 of the above-entitled Court located at 3470 Twelfth Street in Riverside, California 92501-3801, Plaintiffs B.K. and N.Z. ("**Plaintiffs**") will and hereby do move this Honorable Court to reconsider its Order on Motion to Dismiss, ECF 28, on the grounds that the Court committed clear error in dismissing with prejudice their Second and Fourth causes of action. Alternatively, Plaintiffs request leave to amend their Second and Fourth causes of action.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, its **Exhibits A** and **B**, all pleadings, papers, and records on file in this Action and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 73, which took place on March 7, 2024.

Dated: March 14, 2024

**CLARKSON LAW FIRM, P.C.**

*/s/ Yana Hart*
Yana Hart, Esq.
Ryan C. Clarkson, Esq.

*Counsel for Plaintiffs and the Proposed Classes*

Plaintiffs B.K. and N.Z. respectfully move the Court, pursuant to Federal Rule of Civil Procedure 54(b) and Local Rule 7-18, to reconsider or vacate the portions of the February 29, 2024 Order (the "**Order**") granting Defendant's Motion to Dismiss Counts Two and Four of Plaintiffs' Complaint—violations of the Electronic Communications Privacy Act, 18 U.S.C. 2111(1), *et seq.* ("**ECPA**") and California's Invasion of Privacy Act, Cal. Penal Code Section 630, *et seq.* ("**CIPA**") respectively—without leave to amend. *See* ECF 28.[1] In the alternative, Plaintiffs request leave to amend their claims with respect to Defendant's violations of the ECPA and CIPA.

## I. PRELIMINARY STATEMENT

Plaintiffs do not make this Motion without careful consideration of the Court's valuable time. However, the Court's Order granting dismissal *with prejudice* as to Plaintiff's Counts Two and Four, *without* leave to amend, on Plaintiff's *first* Complaint and in response to Defendant's *first* Motion to Dismiss, sets it well outside established Ninth Circuit precedent.

Plaintiffs' Complaint alleges that Defendant disregarded the medical information privacy rights of its medical patients, visitors, and users of its healthcare websites, who trusted Defendant to safeguard their personal medical information and communications. Defendant intentionally – and without Plaintiffs' consent – allowed unauthorized third parties, including Facebook, a company with its own poor track record of safeguarding user privacy, to intercept patients' clicks, communications on, and visits to Defendant's websites for research and requests related to medical conditions, treatments, and appointments. For example, Plaintiffs allege that Defendant installed Facebook's Meta Pixel and other third-party tracking technologies in order to intercept and send personally identifiable information ("**PII**") and protected health information ("**PHI**") (collectively, "**Private Information**") to

---

[1] Plaintiffs do not seek reconsideration of the Court's dismissal of Count Three asserting alleged violations of 18 U.S.C. § 2511(3)(a).



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

third parties such as Facebook without consent. Defendant moved to dismiss Plaintiffs' Complaint and the Court ruled on Defendant's motion without allowing Plaintiffs an opportunity to cure any pleading deficiencies the Court identified. *See infra* at IV.B.

This Motion raises two narrow issues. The first discrete issue presented by this Motion is whether the Court committed clear error when its analysis of the crime-tort exception to one-party consent for Plaintiffs' ECPA and CIPA claims relied only on *one part* of Plaintiffs' argument—Defendant's commercial advantage. The Court *did not consider* Plaintiffs' more fulsome allegations in their Complaint and argument that Defendant's purpose for intercepting Plaintiffs' and Class Members' Private Information was to disclose that information to Facebook in knowing violations of the Health Insurance Portability and Accountability Act ("**HIPAA**"), among other state and federal laws, as well as common law. These violations constituted the independently illegal or actionable conduct such that the party exception is inapplicable. Accordingly, Plaintiffs respectfully request that this Honorable Court reconsider its analysis of Plaintiffs' ECPA and CIPA claims.

The second issue before the Court is whether the Court should have afforded Plaintiffs, who have not yet amended their complaint, an opportunity to amend their Second and Fourth Causes of Actions. In line with United States Supreme Court and Ninth Circuit precedent, the answer is yes. In this case, Plaintiffs have not yet amended their Complaint with respect to those two causes of action. Instead, the Court denied Plaintiffs the opportunity to cure any pleading deficiencies that the Court identified. To support this Motion, Plaintiffs attach a proposed amended complaint to demonstrate why amendment would not be futile, and a redlined version that shows the differences between the original Complaint and the Amended Complaint. *See* Plaintiffs' **Exhibits A** and **B**, respectively. For the reasons explained in detail below, justice requires that Plaintiffs be given an opportunity to amend their Complaint.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

## II. Procedural History & This Court's Decision

Plaintiffs filed their Complaint on October 12, 2023, alleging fourteen causes of action. ECF 1. On December 15, 2023, Defendant filed its Notice of Motion and Motion to Dismiss Plaintiffs' Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("**Motion to Dismiss**"). ECF 18. On January 15, 2024, Plaintiffs filed their Opposition to the Motion to Dismiss ("**Opposition**"). ECF 20. Plaintiffs' Opposition requested leave to amend if "the Court determines any claim is inadequately pleaded." *Id*. at 30 (citing *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) ("Leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegations of other facts.")) (cleaned up). On February 5, 2024, Defendant filed its reply. ECF 24.

On February 29, 2024, the Court granted Defendant's Motion to Dismiss without oral argument. *See* ECF 28. The Court's Order dismissed eleven of Plaintiffs' claims with leave to amend and granted Plaintiffs leave to amend their complaint generally. *See id*. at 12. But the Order dismissed Claims Two, Three and Four with prejudice. *Id*. at 6-7. In doing so, the Court analyzed Plaintiffs' ECPA and CIPA claims regarding the criminal and/or tortious exception to the party exception to both statutes. *Id*. at 6-7. Specifically, the Court concluded that "[w]hile Plaintiffs allege that Defendant engaged in the allegedly illegal interception of their and the proposed class members' information "for Defendant's commercial advantage," Plaintiffs do not allege that this purpose constitutes independently illegal or actionable conduct such that the party exception is inapplicable." *Id*. at 7. As a result, the Court held that "(1) the "criminal or tortious act" exception to the party exception is inapplicable to Plaintiffs' ECPA and CIPA claims, (2) the party exception to Plaintiffs' ECPA and CIPA claims exempts Defendants from liability, and (3) Plaintiffs fail to state a claim for violation of either statute." *Id*. The Court did not state that Plaintiffs' Complaint could not be cured with additional allegations.





Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

## III. Legal Standard

A motion for reconsideration should be granted where the district court "is presented with newly discovered evidence, *committed clear error*, or if there is an intervening change in the controlling law." *Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (emphasis added & internal quotes omitted). Local Rule 7-18 provides that "[a] motion for reconsideration of an Order on any motion or application may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a *failure to consider material facts* presented to the Court before the Order was entered." L.R. 7-18 (emphasis added). This Court has previously stated that motions for reconsideration are appropriate if "the Court committed clear error or the initial decision was manifestly unjust." *Cox v. LB Lending, LLC*, 2018 WL 4761614, at *5 (C.D. Cal. May 23, 2018).

## IV. Argument

The Court should reconsider its Order because it committed clear error by (a) incorrectly concluding that the criminal-tortious exception did not apply to Plaintiffs' ECPA and CIPA claims without considering all material facts as set forth in the Complaint and (b) dismissing the two claims without leave to amend without analyzing whether Plaintiffs' Complaint could be cured.

### A. The Order's Analysis of the Crime-Tort Exception to the ECPA and CIPA Constitutes Clear Error Warranting Reconsideration.

Reconsideration is appropriate here because the Court committed clear error by failing to analyze Plaintiffs' detailed arguments in their Opposition supported by allegations in the Complaint regarding the applicability of the criminal or tortious exception to the party exception to Plaintiffs' ECPA (Count Two) and CIPA (Count




Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

Four) causes of action. Although "[n]o motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion," this Motion identifies "a failure to consider material facts presented to the Court before the Order was entered." L.R. 7-18. Where a court relies on a misunderstanding of plaintiff's allegations or arguments, reconsideration may be granted. *See, e.g.*, *Wide Voice LLC v. CenturyLink Commc'ns, LLC*, 2022 WL 1394747, at *2 (C.D. Cal. Jan. 24, 2022) (granting motion to reconsider in part where the court's order did not address one of plaintiff's arguments specifically); *Garcia v. Capistrano Unified Sch. Dist.*, 2018 WL 5858708, at *3 (C.D. Cal. May 1, 2018) (granting motion for reconsideration because "the Court manifestly failed to consider" specific allegations).

Specifically, Plaintiffs' Opposition and Complaint identified Defendant's violations of the HIPAA Privacy Rule and 42 U.S.C. § 1320d-6. *See* ECF 20 at 16 (citing ¶¶ 30, 100 & 243-45). HIPAA proscribes the unauthorized acquisition of health information when committed with the intent to use it for commercial advantage or personal gain. It is Defendant's violation of HIPAA, not its use of Plaintiffs' health information for commercial advantage, that constitutes Defendant's criminal or tortious conduct. Plaintiffs also argued that Defendant's "surreptitious tracking was done with criminal and tortious intent in violation of the Constitution and laws of the United States and California." *Id.* at17 (citing ¶¶ 239-242; *see also Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1068 (N.D. Cal. 2021) (holding that one-party consent was "not a defense to Plaintiffs' Wiretap Act claim because their communications were allegedly intercepted for the purpose of associating their data with user profiles, which is a criminal and tortious act").[2]

[2] Plaintiffs Complaint also pleads a clear violation of Clause Four of CIPA "by embedding Facebook Pixels on its Web Properties, Defendant aided, agreed with, employed, and conspired with Facebook to wiretap consumers communications on Defendant's Web Properties using the Facebook Pixel snipped codes and to





Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

In contrast, the Order focused only on Plaintiffs' allegation that Defendant intercepted their health information "for Defendant's commercial advantage." ECF 28 at 7. The Court found that Plaintiffs did "not allege that this purpose constitutes independently illegal or actionable conduct such that the party exception is inapplicable." *Id*. However, the Order did not consider Plaintiffs' allegations and arguments regarding Defendant's violations of HIPAA. Nor did the Order recognize that the criminal or tortious exception should apply because of Defendant's violations of the additional eleven causes of action that Plaintiffs brought against Defendant. As a result, the Order did not consider material facts presented to the Court in Plaintiffs' Opposition. Accordingly, Plaintiffs' Motion should be granted. *See, e.g.*, *Wide Voice LLC*, 2022 WL 1394747, at *2 (granting motion to reconsider in relevant part); *Garcia*, 2018 WL 5858708, at *3 (granting motion to reconsider).

**B. The Court was Required to Evaluate Whether Plaintiffs' Complaint Could be Cured with Allegations of Additional Facts.**

Reconsideration is further appropriate here because the Court dismissed Plaintiffs' ECPA and CIPA claims with prejudice, without making the required determination under the *Forman* factors or of futility. As explained below, Plaintiffs proposed amended complaint demonstrates that amendment is not futile. In the alternative to reconsideration, Plaintiffs request leave to amend their Complaint.

---

accomplish the wrongful conduct at issue here." ¶ 280. As other courts in this circuit have held, these allegations support a violation under Clause Four. *See, e.g.*, *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897–98 (N.D. Cal. 2023) ("[I]f a third party listens in on a conversation between the participants (even if one participant consents to the presence of that third party), then the third party is liable under the second prong (and the participant is often liable under the fourth prong)."); *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *9 (S.D. Cal. Oct. 24, 2023) ("Plaintiffs plausibly allege that JC Penney has violated CIPA Clause Two, by aiding and abetting Vergic, in allowing Vergic to "listen in" on chats between Website users and JC Penney customer service representatives.").





Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

First, where a district court dismisses a complaint with prejudice, the court must "make a determination that the pleading could not possibly be cured by the allegation of other facts." *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (cleaned up). The United States Supreme Court in *Foman* set out the five factors district courts should evaluate in deciding whether to grant leave to amend: (1) undue delay; (2) evidence of the movant's bad faith or dilatory motive; (3) repeated failures to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party and (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). While the Court need not give each factor equal weight, "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis in original). The Ninth Circuit has held that a decision to deny leave to amend "without any explanation by the district court is subject to reversal." *Id*. (reversing motion to dismiss without leave to amend); *see also Smith v. Pac. Properties & Dev. Corp.*, 358 F.3d 1097, 1106 (9th Cir. 2004) (similar).

It is well-established under Federal Rule of Civil Procedure 15(a) and Supreme Court precedent "that leave to amend shall be freely given when justice so requires; this mandate is to be heeded." *Foman*, 371 U.S. at 182 (1962) (cleaned up). Notably, requests for leave to amend should be granted with "extreme liberality." *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citations & quotations omitted). Put simply, if a proposed amendment would allow a plaintiff to state a legally cognizable claim, the district court should grant leave to amend. *See, e.g.*, *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016) ("Dismissal of a complaint without leave to amend is only proper when, upon *de novo* review, it is clear that the complaint could not be saved by any amendment."); *Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 726 (9th Cir. 2000) (reversing district court where amendment would not be futile).



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

Here, the Court's Order recognized that under Federal Rule of Civil Procedure 15, a "district court should grant leave to amend even if no request to amend the pleading was made, *unless it determines that the pleading could not possibly be cured* by allegation of other facts." ECF 28 at 5-6 (emphasis added). In this case, Plaintiffs requested leave to amend if the Court determined that any claim was inadequately pleaded. *See* ECF 20 at 30. Notably, Plaintiffs have not yet filed an amended complaint in their case. Nevertheless, in granting the Motion to Dismiss Plaintiff's ECPA and CIPA claims without leave to amend, the Court did not consider Plaintiff's request. *See* ECF 28 at 6-7. Nor did the Court's Order evaluate any of the *Forman* factors or make a finding that the pleadings concerning Defendant's violations of ECPA and CIPA "could not possibly be cured" by amendment. *See id*.

Second, if given the opportunity to amend their complaint, Plaintiffs can more clearly allege how Defendant intentionally intercepted the contents of Plaintiffs' and Class members' electronic communications for the purpose of committing a criminal or tortious act in violation of HIPAA, the Constitution or laws of the United States or California and common law, including invasion of privacy, breach of confidence and breach of fiduciary duty. *See* Clarkson's Decl. ¶ 2 **Ex. A** at 281-2. Courts in this district have granted motions for reconsideration to allow leave to amend where plaintiffs present evidence that their original allegations can be supplemented with additional facts. *See, e.g.*, *Williams-Blair v. Brennan*, 2021 WL 3660756, at *1 (C.D. Cal. June 2, 2021) (granting motion for reconsideration to allow leave to amend); *Postman v. Spin Master, Ltd.*, 2015 WL 12747905, at *5 (C.D. Cal. Nov. 30, 2015) (similar); *Monaco v. Bear Stearns Companies, Inc.*, 2011 WL 11027559, at *6 (C.D. Cal. Jan. 13, 2011) (similar); *Lincoln v. Cal-W. Reconveyance Corp.*, 2009 WL 10674759, at *3 (C.D. Cal. July 13, 2009) (granting motion for reconsideration in part and allowing plaintiff leave to amend); *Valentine v. First Advantage Saferent, Inc.*, 2008 WL 4367353, at *2 (C.D. Cal. Sept. 23, 2008) (mooting motion to reconsider after granting leave to amend).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

In particular, Plaintiffs allegations include how Defendant violated a provision of HIPAA, 42 U.S.C. § 1320d-6(a)(3), which imposes a criminal penalty for knowingly disclosing individually identifiable health information (IIHI) to a third party. *See* Clarkson's Decl. ¶ 2 **Ex. A** at 284. HIPAA defines IIHI as:

> any information, including demographic information collected from an individual, that—(A) is created or received by a health care provider ... (B) *relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual*, and (i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

*Id*. (emphasis added). Plaintiffs' and Class Members' Private Information includes medical conditions and medical records such as Plaintiff B.K's knee pain and replacement and Plaintiff N.Z.'s irregular mammograms, polyps and hemorrhoids. *Compare* Dkt. 1 at ¶¶ 171, 174, *with e.g.*, Clarkson's Decl. ¶ 2 **Ex. A** at 113, 147-49. This information qualifies as IIHI and Defendant's disclosure to third parties constitutes tortious and/or criminal conduct through a violation of 42 U.S.C. § 1320d(6). Clarkson's Decl. ¶ 2 **Ex. A** at 284-88. Similarly, Plaintiffs and Class members did not authorize Defendant to acquire the content of their communications for purposes of invading their privacy by intercepting and disclosing via the Pixels. *See, e.g.*, *id*. at 289. In sending and in acquiring the content of Plaintiffs' and Class members' communications relating to the browsing of Defendant's Website, researching of diagnosis and treatment, searching for doctors and medical specialists and making appointments, Defendant's purpose was tortious and designed to violate federal and state law, including as described above, a knowing intrusion into a private place, conversation or matter that would be highly offensive to a reasonable person. *Id*. at 300. Moreover, Plaintiffs more detailed allegations demonstrate how Defendant's scheme or artifice to defraud in this action consists of (a) the false and





Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

misleading statements and omissions in its privacy policy and (b) the placement of the 'fbp' cookie on patient computing devices disguised as a first-party cookie on Defendant's Website rather than a third-party cookie from Facebook. *Id*. at 298. Thus, the Court should reconsider or alter its original Order to permit Plaintiffs to amend their ECPA and CIPA claims.

In the alternative, the Court should grant Plaintiffs leave to amend under Federal Rule of Civil Procedure 15 as Plaintiffs' revised allegations demonstrate that amendment is not futile. The remaining *Forman* factors are also in Plaintiffs favor. There has been no undue delay in bringing this Motion—as this Motion is brought within fourteen days of the Court's order on Defendant's Motion to Dismiss. Nor do Plaintiffs bring this Motion in bad faith. Importantly, Plaintiffs have not yet been given an opportunity to cure any deficiencies in their original complaint—to date, the Court has not afforded a previous amendment. Finally, there is no undue prejudice to Defendant. Indeed, Plaintiffs intend to amend their Complaint with respect to the remaining claims that the Court dismissed with leave to amend, so Defendant is already on notice that a First Amended Complaint will be filed.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court reconsider and amend the portion of its Order granting dismissal of Plaintiffs' Second and Fourth Causes of Action without leave to amend. In the alternative, Plaintiffs request leave to amend their Second and Fourth Causes of Action.

Dated: March 14, 2024

**CLARKSON LAW FIRM, P.C.**

*/s/ Yana Hart*
Yana Hart, Esq.
Ryan J. Clarkson, Esq.

**ALMEIDA LAW GROUP LLC**

*/s/ John R. Parker, Jr.*
John R. Parker, Jr., Esq.

*Counsel for Plaintiffs & the Proposed Classes*



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com