Brenda R. Sharton (*Admitted Pro Hac Vice*)
DECHERT LLP
One International Place, 40th Floor
100 Oliver Street
Boston, MA 02110-2605
Telephone: (617) 728-7100
Facsimile: (617) 275-8374
brenda.sharton@dechert.com

Theodore E. Yale (*Admitted Pro Hac Vice*)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Facsimile: (215) 655-2455
theoore.yale@dechert.com

Benjamin M. Sadun (Bar No. 287533)
DECHERT LLP
US Bank Tower
633 West 5th Street, Suite 4900
Los Angeles, CA 90071-2032
Telephone: (213) 808-5700
Facsimile: (213) 808-5760
benjamin.sadun@dechert.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

B.W. and JANE DOE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SAN DIEGO FERTILITY CENTER MEDICAL GROUP, INC. AND IVY FERTILITY SERVICES, LLC.,

Defendants.

Case No.: 3:24-cv-00237-LL-BLM

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE CLASS ALLEGATIONS IN PLAINTIFFS' COMPLAINT**

Date: July 17, 2024
Time: 9:00 A.M.
Judge: Hon. Linda Lopez

Action Filed: February 5, 2024

**NOTICE OF MOTION AND MOTION TO STRIKE**

TO THE HONORABLE COURT, AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD HEREIN:

NOTICE IS HEREBY GIVEN that on July 17 at 9:00 A.M., in Courtroom 5D, 5th Floor of the above-entitled Court located at 221 West Broadway, San Diego, CA 92102, Defendants San Diego Fertility Center Medical Group, Inc. ("SDFC") and Ivy Fertility Services, LLC., will and hereby do move to strike paragraphs 6, 277, and 278 of Plaintiffs' Complaint insofar as they relate to: (1) fertility clinics other than SDFC; (2) website users who do not have Facebook accounts; and (3) Counts 5, 6, and 9 as to residents of states other than California.

This Motion is made based on Federal Rules of Civil Procedure 23(a), 23(b), and 23(d)(1)(D); this Notice of Motion and Motion; the attached Memorandum of Points and Authorities filed concurrently herewith; the Complaint, and the pleadings, papers, and other documents on file in this action along with any evidence and argument presented at the hearing on this matter.

Dated: June 12, 2024

*/s/ Brenda R. Sharton*
Brenda R. Sharton

**DECHERT LLP**
*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1
RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........ 2
LEGAL STANDARD ........ 4
ARGUMENT ........ 4
I. THE CLASSES SHOULD BE LIMITED TO PEOPLE WHO USED THE SDFC WEBSITE. ........ 5
II. THE CLASS DEFINITIONS SHOULD BE LIMITED TO FACEBOOK USERS. ........ 10
III. THE NAMED PLAINTIFFS CANNOT BRING COMMON LAW CLAIMS ON BEHALF OF A NATIONWIDE CLASS. ........ 11
A. Nationwide Common Law Claims That Do Not Identify What States' Laws Apply Must Be Stricken. ........ 12
B. Plaintiffs Lack Standing to Bring Non-California Common Law Claims on Behalf of Absent Class Members. ........ 13
C. Nationwide Common Law Claims Would Be *Per Se* Unmanageable. ........ 15
CONCLUSION ........ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Augustine v. Talking Rain Bev. Co.*,
386 F. Supp. 3d 1317 (S.D. Cal. 2019) ....................12

*Brown v. Starbucks Corp.*,
2019 WL 4183936 (S.D. Cal. Sept. 3, 2019) ....................12, 14

*Carpenter v. PetSmart, Inc.*,
441 F. Supp. 3d 1028 (S.D. Cal. 2020) ....................4, 14

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015)....................5, 14

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ....................7

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)....................7, 13

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982)....................13

*General Telephone Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)....................1

*Georgine v. Amchem Prod., Inc.*,
83 F.3d 610 (3d Cir. 1996) ....................16

*Gianino v. Alacer Corp.*,
846 F. Supp. 2d 1096 (C.D. Cal. 2012)....................15

*Haley v. Medtronic, Inc.*,
169 F.R.D. 643 (C.D. Cal. 1996)....................15

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir.1992) ....................8

*Harris v. LSP Prod. Grp., Inc.*,
2021 WL 2682045 (E.D. Cal. June 30, 2021) ....................12

## TABLE OF AUTHORITIES (CONT'D.)

**Page(s)**

**Cases**

*Hernandez v. Burger*,
102 Cal. App. 3d 795 (1980) .......... 13

*Hernandez v. State Farm Fire & Cas. Co.*,
2017 WL 932198 (S.D. Cal. Mar. 9, 2017) .......... 5

*Hovsepian v. Apple, Inc.*,
2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) .......... 10, 11

*Johnson v. Nissan N. Am., Inc.*,
272 F. Supp. 3d 1168 (N.D. Cal. 2017) .......... 5, 14

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 WL 6466195 (N.D. Cal. Oct. 3, 2023) .......... 13

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .......... 7

*Manukyan v. Cach, LLC*,
2012 WL 6199938 (C.D. Cal. Dec. 11, 2012) .......... 6

*Marsh v. First Bank of Delaware*,
2014 WL 554553 (N.D. Cal. Feb. 7, 2014) .......... 1, 6, 15

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .......... 11, 13, 15, 16

*McCarron v. Cnty. of Ventura*,
2021 WL 9315371 (C.D. Cal. 2021) .......... 8

*Mendez v. Glob. Inst. of Stem Cell Therapy & Rsch., USA*,
2022 WL 3019858 (S.D. Cal. July 29, 2022) .......... 12, 13, 14

*Minkler v. Kramer Lab'ys, Inc.*,
2013 WL 3185552 (C.D. Cal. Mar. 1, 2013) .......... 8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) .......... 4

## TABLE OF AUTHORITIES (CONT'D.)

**Page(s)**

**Cases**

*Petherbridge v. Altadena Fed. Sav. & Loan Assn.*,
112 Cal. Rptr. 144 (Ct. App. 1974) .......... 9

*Pilgrim v. Universal Health Card, LLC*,
660 F.3d 943 (6th Cir. 2011) .......... 16

*Rios v. Cnty. of Sacramento*,
562 F. Supp. 3d 999 (E.D. Cal. 2021) .......... 8

*Rodriguez v. Instagram, LLC*,
2013 WL 3732883 (N.D. Cal. July 15, 2013) .......... 15, 16

*Route v. Mead Johnson Nutrition Co.*,
2013 WL 658251 (C.D. Cal. Feb. 21, 2013) .......... 15, 16

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) .......... 4, 5

*Satchell v. Sonic Notify, Inc.*,
234 F. Supp. 3d 996 (N.D. Cal. 2017) .......... 8

*Schwartz v. Lights of Am.*,
2012 WL 4497398 (C.D. Cal. Aug. 31, 2012) .......... 17

*Sikes v. Teleline, Inc.*,
281 F.3d 1350 (11th Cir. 2002) .......... 15

*Stearns v. Select Comfort Retail Corp.*,
763 F.Supp.2d 1128 (N.D. Cal. 2010) .......... 5

*Stokes v. CitiMortgage, Inc.*,
2015 WL 709201 (C.D. Cal. Jan. 16, 2015) .......... 4

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) .......... 5

*Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) .......... 4

## TABLE OF AUTHORITIES (CONT'D.)

**Page(s)**

**Cases**

*Trazo v. Nestlé USA, Inc.*,
2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) .......... 9

*Vinole v. Countrywide Home Loans, Inc*,
571 F.3d 935 (9th Cir. 2009) .......... 4

*Walcoff v. Innofoods USA, Inc.*,
2023 WL 3262940 (S.D. Cal. May 4, 2023) .......... 5, 14

*Woodard v. Labrada*,
2021 WL 4499184 (C.D. Cal. Aug. 31, 2021) .......... 17

*Zinser v. Accufix Rsch. Inst., Inc.*,
253 F.3d 1180 (9th Cir.) .......... 15

**Court Rules**

Fed. R. Civ. P. 8 .......... 6

Fed. R. Civ. P. 12 .......... 3

Fed. R. Civ. P. 23 .......... *passim*

Fed. R. Evid. 201 .......... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

As Justice Stevens wrote for a unanimous Supreme Court, sometimes it is "plain enough from the pleadings" that a case cannot be maintained as a class action. *General Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). In such circumstances, as courts in this Circuit have done time and time again, courts are to strike class allegations *before* discovery. If ever that was true, this is that case.

Defendant San Diego Fertility Clinic Medical Group, Inc. ("SDFC") operates three fertility centers in San Diego. Defendant Ivy Fertility Services, LLC ("Ivy") provides certain administrative services to SDFC. Plaintiffs are two residents of San Diego. Complaint ("Compl.") (ECF No. 1) ¶¶ 36, 38. They purport to be patients of SDFC and claim to have been injured by the use of an analytics tool called the "Meta Pixel" on SDFC's website.

Yet, oddly, Plaintiffs' Complaint is not limited to challenging the SDFC website. Instead, on behalf of a proposed nationwide class, the two Named Plaintiffs are challenging ten separate websites of ten separate clinics, including but not limited to SDFC. Given that the Complaint lacks a single allegation about Named Plaintiffs visiting—much less being injured by—any website besides SDFC's, Plaintiffs' class allegations are plainly overbroad and should be stricken.[1] Indeed, Plaintiffs' class allegations are overbroad in at least three separate ways.

***First***, Plaintiffs seek to represent people who used completely different websites belonging to out-of-State entities who are not Defendants in this case. Tellingly, the Complaint contains no specific allegations about how any of these non-SDFC websites operate or use the Meta Pixel. Even if Plaintiffs could allege that non-SDFC websites

---

[1] Defendants reserve their rights to raise these and additional challenges in opposition to a motion for class certification in the event Plaintiffs' case is not dismissed. There are numerous other reasons this case cannot be maintained as a class action. Given the procedural posture of the case, however, this Motion focuses on incurable defects with the proposed class that are evident from the Complaint and that would subject Defendants to unnecessary overbroad discovery if not stricken.

operate similarly to SDFC's website, Plaintiffs are not typical of absent persons who visited websites Plaintiffs never used.

***Second,*** Plaintiffs are pursuing common law claims on behalf of persons living outside of California. Plaintiffs—as California residents who interacted with only a California clinic in California—have no standing to bring foreign-law claims. And, even if Plaintiffs had such standing, a nationwide class involving common law claims under the laws of all fifty states is *per se* unmanageable.

***Third***, Plaintiffs' proposed class includes website users who do not have Facebook accounts, even though Plaintiffs' theory of harm is that Meta tied user data to Facebook accounts. Because such individuals suffered no harm *under Plaintiffs' own theory,* individuals without Facebook accounts should be excluded from this case.

In sum, where, as here, class allegations are overtly overbroad, Ninth Circuit courts consistently strike class allegations at the pleadings stage. The same should occur here.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Defendant SDFC operates three fertility clinics in San Diego. Defendant Ivy provides certain administrative services to SDFC. Plaintiffs B.W. and Jane Doe purport to be San Diego residents and former patients of SDFC who used the SDFC website at least once. Compl. ¶¶ 242-43, 257-58. They allege that Defendants disclosed their "private information" to Meta Platforms, Inc., operator of the Facebook social media platform, through the use of a website analytics tool called the "Meta Pixel" installed on the SDFC website. *E.g., id.* ¶¶ 15, 17, 39. According to Plaintiffs' Complaint, Meta could match this information to Plaintiffs' "real-world identit[ies]" because the data sent by the Meta Pixel contained their Facebook IDs linked to their Facebook accounts. *Id.* ¶¶ 15, 19, p. 8 n.15.

Plaintiffs also claim, without any detail or elaboration, that Ivy owns and operates the websites of nine other fertility companies with clinics in seven other states (Idaho, Nevada, New York, Tennessee, Utah, Virginia, and Washington). *Id.* ¶ 6. As is

evident from those websites themselves, the non-SDFC clinics are all owned and operated by different physicians via different corporate entities, and each has its own distinct website and distinct web domain. *See infra* at 7. Nevertheless, Plaintiffs refer to those clinics' websites collectively as "Defendants' Web Properties" and make undifferentiated allegations concerning the "Web Properties." Compl. ¶¶ 6-9. The Complaint says nothing about how each website operates or supposedly uses the Meta Pixel. Plaintiffs do not name any of those other clinics as defendants in this case and do not allege they were patients of those clinics or even visited their websites.

Plaintiffs seek to represent two putative classes: a "Nationwide Class" and a "California Sub-Class." They have defined each class to include "All individuals … whose Private Information was disclosed to a third party without authorization or consent through the third-party tracking technologies on Defendants [sic] Web Properties"—essentially, based on Plaintiffs allegations, everyone in America who ever visited any of the ten clinics' websites regardless of where they live and regardless of whether they have ever had any interaction with Defendants. *Id.* ¶ 277.

Plaintiffs assert eight statutory and common-law causes of action on behalf of themselves and the California Sub-Class. They assert four of those counts on behalf of the Nationwide Class, including common law claims for "common law invasion of privacy," "breach of implied contract," and "unjust enrichment." *Id.* at 77, 92, 93, 98.

On May 13, 2024, Defendants filed a Rule 12(b)(6) Motion, seeking dismissal of Named Plaintiffs' entire Complaint because B.W. and Jane Doe fail to state legally sufficient claims *as to themselves*. ECF No. 12. Defendants expect to succeed on that pending Motion for the compelling reasons set for therein. In the unlikely event the Court doe s not grant the Motion to Dismiss, Defendants also bring the instant motion pursuant to Fed. R. Civ. P. 23(c)(1)(A) to narrow the claims *as to the class*. This Motion should be granted irrespective of the Rule 12(b)(6) Motion because, even if Plaintiffs could state colorable individual claims—and they cannot—their proposed class definitions are incurably overbroad.

## LEGAL STANDARD

Fed. R. Civ. P. 23(c)(1)(A) directs courts to resolve class certifiability at "an early practicable time." *See also Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) ("The Federal Rules provide a mechanism for exercising defective class allegations before discovery."). The Court need not wait until the plaintiff moves for class certification to rule on class allegations. *Vinole v. Countrywide Home Loans, Inc*, 571 F.3d 935, 939-41 (9th Cir. 2009).

Even at the pleading stage, "the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of [Rule 23] are satisfied or that discovery is likely to produce substantiation of the class allegations." *Stokes v. CitiMortgage, Inc.*, 2015 WL 709201, at *4 (C.D. Cal. Jan. 16, 2015) (quoting *Mantolete v. Bolger*, 161 F.2d 1416, 1424 (9th Cir. 1985)). Where, as here, it is evident from the face of the complaint that a putative class action cannot meet the requirements of Rule 23, the court should "require that the pleadings be amended to eliminate allegations about representation of absent persons." *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1032 (S.D. Cal. 2020) (quoting Fed. R. Civ. P. 23(d)(1)(D) and dismissing claims pertaining to nationwide class). And where it is clear "that discovery could not possibly aid Plaintiffs in demonstrating that a class action is appropriate," the class allegations should be stricken with prejudice before discovery. *See, e.g.*, *Stokes*, 2015 WL 70920 at *4, 10.

## ARGUMENT

"In the Ninth Circuit, ***district courts must ensure that the class is not defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct***." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 (9th Cir. 2016) (cleaned up)[2]; *accord, e.g.*, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (same). Accordingly, where, as here, it is clear from the face of the complaint

[2] Except where otherwise noted, all emphasis in quotations is supplied.

that the proposed class necessarily includes people who clearly were not harmed by the specific conduct that allegedly injured Plaintiff, the class allegations should be stricken or narrowed before discovery. *E.g.*, *Hernandez v. State Farm Fire & Cas. Co.*, 2017 WL 932198, at *4 (S.D. Cal. Mar. 9, 2017) (striking class allegations before discovery where proposed class definition included "many" people who were not injured by the alleged conduct); *Sanders*, 672 F. Supp. 2d at 991 (striking class definition before discovery that included people not affected by the alleged conduct and "individuals who suffered no damages"); *Stearns v. Select Comfort Retail Corp.*, 763 F.Supp.2d 1128, 1152 (N.D. Cal. 2010) (same); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146-47 (N.D. Cal. 2010) (striking class definition before discovery that included members who had suffered no injury and had no standing to sue).

Similarly, the Court should also dismiss claims that the Named Plaintiffs do not have personal standing to bring, including claims "asserted under the laws of states in which no plaintiff resides or has purchased products." *Walcoff v. Innofoods USA, Inc.*, 2023 WL 3262940, at *5 (S.D. Cal. May 4, 2023) (dismissing nationwide class claims before discovery and collecting cases doing same); *accord, e.g.*, *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1175 (N.D. Cal. 2017) (same). Narrowing the class allegations now to eliminate claims Plaintiffs could not possibly pursue and class members Plaintiffs could not represent is critical to avoid subjecting Defendants (and third parties) "to the expense and burden of nationwide discovery" regarding a class that could never be certified under Rule 23. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) (dismissing overbroad class allegations).

## I. The Classes Should Be Limited to People Who Used the SDFC Website.

This case is about Defendants' alleged configuration of a tracking pixel on the website of a single fertility clinic in San Diego: SDFC. Both Plaintiffs allege that they were patients of SDFC and entered "Private Information" into the SDFC website (https://www.sdfertility.com). Compl. ¶¶ 242-43, 257-58. The SDFC website is so

central to Plaintiffs' Complaint that they refer to it simply as "the Website," *id.* ¶ 9, and reference it ***37 times***. Nevertheless, Plaintiffs seek to manufacture a nationwide class action comprising visitors to the websites of nine other fertility companies operating in California, Idaho, Nevada, Tennessee, Utah, Virginia, and Washington based on the bare, conclusory allegation that those websites are also "operated by" Ivy. *Id.* ¶ 9. That is not enough. Plaintiffs do not allege any facts about those websites or their operation; they merely list their urls. *See id.* ¶ 6. And even if they alleged facts concerning each clinic—they do not—each clinic is owned and operated by third parties that have no connection to the SDFC website, the Plaintiffs, or, for most, the State of California. Each of these three shortcomings independently warrants striking Plaintiffs' non-SDFC claims.

***First***, the Complaint says nothing about how the non-SDFC websites used the Meta Pixel. Indeed, the *only* allegation about these websites is that they are purportedly all "owned and operated by Defendant Ivy Fertility." Compl. ¶ 6. But that says nothing about their supposed configuration or use of the Meta Pixel. Indeed, this stands in stark contrast to Plaintiffs' description about the SDFC website *actually used* by Plaintiffs. For example, the Complaint contains ten pages describing what information the Meta Pixel allegedly collects as users interact *with the SDFC website* and showing purported excerpts of source code *from the SDFC website*. *Id.* ¶¶ 86-87, 92-106. But it contains nothing analogous about the other websites. Instead, where it mentions other websites at all,[3] the Complaint resorts to group pleading that the "Web Properties" purportedly used the Meta Pixel. *See, e.g.*, ¶¶ 13-16. But Plaintiffs never allege that the act of installing the Meta Pixel is per se unlawful—it is the configuration that matters.

Thus, "undifferentiated allegations" like Plaintiffs' "fail[] to comply with Rule 8." *Manukyan v. Cach, LLC*, 2012 WL 6199938, at *3 (C.D. Cal. Dec. 11, 2012). Indeed, another California district court recently dismissed two medical entities in a

[3] In many instances, Plaintiffs have not even bothered with a conclusory allegation concerning the other Web Properties, instead limiting their allegations to only SDFC. *E.g.*, Compl. ¶¶ 28, 63, 65, 323, 326-27.

Meta Pixel case where the Plaintiffs "alleged in conclusory terms" that they all "have a hand in the operation of the website," but failed to include any specifics as to how those two entities "had anything to do with how the website and mobile applications are run." *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *5 (N.D. Cal. Apr. 11, 2024). *The situation here is identical*. Plaintiffs plead no facts that, if true, would show that these websites used the Meta Pixel in an unlawful way. And, even if they did, they do not explain how those websites relate to the Defendants they have named in this case.

Plaintiffs' attempt to shoehorn users of non-SDFC websites into SDFC-specific allegations is especially egregious because even a cursory examination of the websites listed by Plaintiffs shows that they are each designed differently and have different owners. The websites all have different color schemes, logos, layouts, and navigation tabs. *See, e.g.*, Exhibit A (printout of the SDFC website); Exhibit B (printout of the Reproductive Partners Medical Group website); Exhibit C (printout of the Fertility Associates of Memphis website); Exhibit D (printout of the Utah Fertility Center website).[4] The websites are also owned by different entities; in fact, each clinic is owned by local physicians. And of course, the websites each describe different facilities in different states. Whereas the SDFC website identifies itself as "[a]n Ivy Fertility Center," Ex. A, the other websites contain no similar statement. The Reproductive Partners Medical Group website states that it is operated by "Reproductive Partners Medical Group, Inc." The Fertility Associates of Memphis website is attributed to "Fertility Associates of Memphis, PLLC" and "Memphis Fertility Laboratory, Inc." Plaintiffs simply ignore these differences and say nothing at all about the relationship between the third-party clinics and SDFC or Ivy.

[4] All exhibits are attached to the accompanying Declaration of Benjamin M. Sadun. The Court can consider these websites under the incorporation-by-reference doctrine since Plaintiffs cite and repeatedly refer to them in their Complaint, and because public websites are properly subject to judicial notice. *See, e.g. Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (considering website referenced in complaint under incorporation-by-reference); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) (taking judicial notice of publicly accessible website under Fed. R. Evid. 201(b)).

Moreover, for each non-SDFC website, Named Plaintiffs' Complaint says nothing about what pages the Meta Pixel was installed on and what information it allegedly collected from those pages. Yet even Plaintiffs acknowledge that configuration is key, as they admit "[t]he Pixels are programmable, meaning that" each website owner controls "which of the webpages on the Website contain the Pixels and which events are tracked and transmitted to [Meta]." Compl. ¶ 63; *see also id.* at 18 n.3 ("The process of adding the pixel to a webpage is a multi-step process that … must be undertaken by the website owner such as SDFC.").

***Second,*** even if Plaintiffs could add allegations that the websites of all ten clinics used the Meta Pixel in the exact same way (which they do not allege and is not true), Plaintiffs lack standing to assert claims based on websites they never used belonging to third parties they never interacted with. "In cases where there are multiple defendants and multiple claims, the plaintiff must demonstrate Article III standing as to each defendant and each claim." *Satchell v. Sonic Notify, Inc.*, 234 F. Supp. 3d 996, 1001 n.2 (N.D. Cal. 2017) (cleaned up); *accord, e.g., Rios v. Cnty. of Sacramento*, 562 F. Supp. 3d 999, 1010 (E.D. Cal. 2021). "[S]tanding may not be imputed across multiple defendants to avoid defendants being haled into court via the naming of wholly unrelated, disconnected defendants solely to guarantee standing." *McCarron v. Cnty. of Ventura*, 2021 WL 9315371, *3 (C.D. Cal. 2021).

***Third,*** for the same reason, Plaintiffs are not typical of people who used non-SDFC websites—especially in other states. The representative plaintiffs' claims must be "typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992). The test of typicality is "whether other class members have been injured by *the same course of conduct*." *Id.*; *see also, e.g., Minkler v. Kramer Lab'ys, Inc.*, 2013 WL 3185552, at *4 (C.D. Cal. Mar. 1, 2013) (differences between the class and its representative defeat typicality).

Plaintiffs are atypical of class members who visited the websites of clinics other than SDFC. Based on Plaintiffs' allegations, their proposed class definition includes everyone in America who visited the websites of ten different fertility clinics, spanning the country from Virginia to Washington state. But those websites are owned and operated by different entities, and the Complaint does not even claim in a conclusory way that all of the websites had the same features or used the Meta Pixel in the same way.

The fact that Named Plaintiffs visited one website allegedly operated by Ivy does not make them typical of class members who visited other, entirely different websites just because those websites are allegedly somehow affiliated with Ivy too. *See, e.g.*, *Petherbridge v. Altadena Fed. Sav. & Loan Assn.*, 112 Cal. Rptr. 144 (Ct. App. 1974) (holding that where the plaintiff had borrowed from one lending institution, she could not maintain a class action against 38 allegedly affiliated institutions). Plaintiffs do not even allege (and could not allege) that the websites are built using a common template.

*Trazo v. Nestlé USA, Inc.*, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013), *on reconsid.*, 113 F. Supp. 3d 1047 (N.D. Cal. 2015), is on point. There, the plaintiffs brought false advertising claims against Nestlé, alleging that Nestlé made misleading claims about 13 different products, such as that they were "natural" or had "no sugar added." *Id.* at *1. The court held the plaintiffs, who purchased only some of those products, were not typical of a class containing people who purchased other products absent showing that all the products were substantially similar. *Id.* at *13. "A 'No Sugar Added' claim, for example, might be portrayed on different parts of the package, in different sizes, on wildly different products." *Id.* In other words, the mere fact that 13 products generally made similar claims and the plaintiffs alleged those claims were all misleading is insufficient to create typicality. The same is true here. The only thing Plaintiffs say about the non-SDFC websites is that they were allegedly operated by Ivy and used the Meta Pixel. But without pleading how those websites operate and how patients of those other clinics use them, they fail to show how Plaintiffs' experiences

on the SDFC site are representative of people who visited entirely different websites for entirely different clinics.

## II. The Class Definitions Should Be Limited to Facebook Users.

The theory of harm underlying the Complaint is that the Meta Pixel linked website data collected about Named Plaintiffs to their Facebook IDs. Compl. ¶¶ 19, 125. According to the Complaint, "[t]he Facebook ID is a string of numbers Facebook uses to identify and connect to a User's Facebook profile." *Id.* at 8 n.15. ***The Complaint refers to Facebook IDs 37 times***, each time claiming the Facebook ID is what allows Meta to link the Meta Pixel data it receives to a specific person so that it can then show that person targeted ads. *E.g.*, *id.* ¶¶ 19, 29, 62, 69, 82, 84, 91, 96, 123. Indeed, the Complaint refers to Meta or Facebook ***over 300 times***. Consistent with this theory, both Named Plaintiffs allege that they are longtime Facebook users and that, therefore, the information SDFC allegedly shared about them included their Facebook IDs. *Id.* ¶¶ 246, 252, 261, 270. They further claim that they were harmed by receiving targeted ads for fertility treatments on their "Meta accounts (Facebook and Instagram)." *Id.* ¶¶ 247, 262-63.

Plaintiffs have conceded the significance of Facebook membership to their case with their recent Opposition to Defendants' Motion to Dismiss (ECF No. 13). Specifically, Plaintiffs argue they satisfy the "individually identifiable" element of the CMIA because they have alleged that "Meta has the name and email address of ***each of its users*** and can match that information with the disclosed Facebook ID." ECF No. 13 at 17. Even granting every inference in Plaintiffs' favor and assuming this to be true, this theory could only apply to class members who had Facebook accounts.

Yet Plaintiffs' proposed class definitions do not differentiate between website visitors who had Facebook IDs and those who did not. Plaintiffs say nothing about how the alleged conduct could have harmed people without Facebook IDs and who were, therefore, anonymous as far as Meta was concerned. The inclusion of such people in the class definition makes the class overbroad.

Indeed, the circumstances here are analogous to those in *Hovsepian v. Apple, Inc.*, 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009). There, the plaintiffs raised claims based on alleged defects in iMac computer screens. The court granted Apple's motion to strike overbroad class allegations before discovery because the proposed class included people who "did not purchase the particular iMac model or the type of iMac screen that Hovsepian alleges is defective." *Id.* at *6. The problem here is the same: users without Facebook accounts—and therefore without Facebook IDs—did not experience the same conduct that Plaintiffs allege harmed them. Accordingly, as in *Hovsepian*, the class definition should be narrowed to include only people who could have suffered the harm alleged by Plaintiff—i.e., by having information linked to their Facebook accounts. *See also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (vacating class certification in case based on misleading advertisements where large numbers of class members may never have seen the ads at issue).

Finally, even if the Named Plaintiffs had pled a theory of harm for non-Facebook users (they have not), their individual claims would not be typical of the claims of non-Facebook users given these individuals allegedly suffered harm by some other means. Those means are not only unstated, but in no way tethered to the Named Plaintiffs. Accordingly, both class definitions should be narrowed to exclude individuals without Facebook accounts.

## III. The Named Plaintiffs Cannot Bring Common Law Claims on Behalf of a Nationwide Class.

The Complaint asserts common law invasion of privacy (Count 5), breach of implied contract (Count 6), and unjust enrichment (Count 8) claims on behalf of non-California residents. It does not specify what state's laws should apply to those claims; that alone is reason to strike them. In any event, because those claims would be governed by the laws of class members' home states, the Named Plaintiffs, as California residents, do not have standing to bring them. And, even if Plaintiffs' Counsel could find 49 additional representatives with standing to bring those claims,

such a class would be unmanageable.

**A. Nationwide Common Law Claims That Do Not Identify What States' Laws Apply Must Be Stricken.**

It is black-letter law that "failure to allege which state law governs a common law claim is grounds for dismissal." *Harris v. LSP Prod. Grp., Inc.*, 2021 WL 2682045, at *15 (E.D. Cal. June 30, 2021) (collecting cases). Accordingly, where a plaintiff "fail[s] to identify which state laws govern the claims brought on behalf of [a] putative nationwide class … the Court cannot determine whether those claims have been adequately pled" and the claims should be stricken. *Mendez v. Glob. Inst. of Stem Cell Therapy & Rsch., USA*, 2022 WL 3019858, at *4 (S.D. Cal. July 29, 2022) (Lopez, J.) (dismissing common law claims as to putative nationwide class); *accord, e.g.*, *Augustine v. Talking Rain Bev. Co.*, 386 F. Supp. 3d 1317, 1333 (S.D. Cal. 2019) (same); *Brown v. Starbucks Corp.*, 2019 WL 4183936, at *8 (S.D. Cal. Sept. 3, 2019) (same); *Harris*, 2021 WL 2682045, at *15 (same).

Indeed, Plaintiffs' class allegations are identical to those this Court recently dismissed in *Mendez*. There, the plaintiff sued medical providers, alleging that they made false and misleading claims about the efficacy of stem cell therapy. She asserted claims for common law "breach of express warranty, quasi-contract, breach of fiduciary duty, fraudulent concealment, intentional misrepresentation, and negligent misrepresentation, on behalf of herself and all members of [a] proposed nationwide class" of people who used the defendants' stem cell treatments. 2022 WL 3019858, at *4 (internal quotation marks omitted). The Court held that those claims were deficient on their face because the plaintiff failed to "identify which state laws govern the claims brought on behalf of the putative nationwide class." *Id.* The same is true here. Like in *Mendez*, Plaintiffs assert common law clams for invasion of privacy, breach of implied contract, and unjust enrichment on behalf of a nationwide class. But they do not identify what states' laws would govern those claims. For that reason alone, Counts 5, 6, and 8 should be stricken as to the nationwide class.

### B. Plaintiffs Lack Standing to Bring Non-California Common Law Claims on Behalf of Absent Class Members.

In addition, allowing Plaintiffs to replead their common law claims on behalf of the Nationwide class would be futile. Those claims would necessarily be governed by the common law of states other than California, and the Named Plaintiffs, as California residents, have no standing to assert such claims.

The Named Plaintiffs do not, and could not, claim that California law governs the common-law claims of the Nationwide Class. The class consists of persons living in all fifty states who interacted with fertility clinics located in eight states (California, Idaho, Nevada, New York, Tennessee, Utah, Virginia, and Washington). *See* Compl. ¶¶ 6, 277. The vast majority of these claims have no connection to California. For example, the class includes Nevada residents who visited the Nevada Fertility Center website and Utah patients of the Utah Fertility Center. *See id.* Applying California law to such claims would violate California's choice-of-law rules and the U.S. Constitution. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012) (reversing certification of nationwide class under California law). Under California's "government interest" test, each sovereignty has the stronger interest in regulating wrongs occurring within its borders. *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980). California "has no legitimate interest in protecting nonresident[s]." *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982). Indeed, courts in nearly identical Pixel cases have rejected attempts to bring California claims on behalf of nationwide classes. *See Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *13 (N.D. Cal. Apr. 11, 2024) (concluding that privacy claims are governed by home states of individuals who visited hospital website); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 6466195, at *3 (N.D. Cal. Oct. 3, 2023) (dismissing California common law claims with prejudice as to nationwide class).

And, as this Court noted in *Mendez*, it is black-letter law that Plaintiffs lack standing to bring common law claims under the laws of states other than California on

behalf of non-California residents. 2022 WL 3019858, at *4; *see also, e.g.*, *Brown*, 2019 WL 4183936, at *8 (same); *In re Carrier IQ, Inc.*, 78 F.Supp.3d at 1075 (finding that named plaintiffs did not have standing to assert claims under the laws of states in which they did not reside or make a relevant purchase); *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1175 (N.D. Cal. 2017) (same and collecting cases).

Accordingly, federal courts in this District, and throughout California, have joined the "growing trend that courts can address the issue of Article III standing at the pleadings stage" to eliminate class claims "asserted under the laws of states in which no plaintiff resides or has purchased products." *Walcoff v. Innofoods USA, Inc.*, 2023 WL 3262940, at *5 (S.D. Cal. May 4, 2023) (collecting cases); *accord, e.g.*, *Johnson*, 272 F. Supp. 3d at 1175 (same). Under these principles, a motion to strike should be granted where, as here, Plaintiffs assert "generic" common law claims on behalf of a nationwide class. *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1039 (S.D. Cal. 2020). Plaintiffs simply "do[] not have standing to assert a claim against [Defendants] under any state's law but California's" because they "did not suffer any injuries in fact traceable to any alleged violations of any other states' laws. Labeling the putative class as a 'nationwide class' does not overcome this fatal deficiency." *Id.*

There is zero daylight between Plaintiffs' claims and those stricken in *Carrier IQ*, *Brown*, *Carpenter*, and *Walcoff*. In *Carrier IQ*, for example, plaintiffs from 18 states sought to represent a nationwide class against a California corporation. 78 F. Supp. 3d at 1060. Among other causes of action, they raised state law privacy claims under the laws of 35 states—including states no named plaintiff lived in. *Id.* at 1061. The court held that the claims under the laws of states where no named plaintiff lived should be narrowed at the pleading stage in order to avoid subjecting the defendants "to the expense and burden of nationwide discovery" on claims that, ultimately, no named plaintiff would have standing to litigate. *Id.* at 1074; *accord, e.g.*, *Johnson*, 272 F. Supp. 3d at 1175 (dismissing for similar reasons). The problem here is even worse than in *Carrier IQ*: here, Named Plaintiffs from only *one* state (as opposed to 18) are

attempting to assert claims under the laws of *fifty* states (as opposed to 35). The common law claims here should be stricken with prejudice as to non-California residents for the same reason.

Putting aside their lack of standing, the Named Plaintiffs would also be inadequate class representatives to assert foreign law claims on behalf of non-Californians under Fed. R. Civ. P. 23(a). *E.g.*, *Rodriguez v. Instagram, LLC*, 2013 WL 3732883, at *3 (N.D. Cal. July 15, 2013) (dismissing with prejudice because "a single resident in California with standing to assert California claims is not an adequate representative of residents, say, in Hawaii, who might be better off having their rights adjudicated under their own state law"); *see also Marsh v. First Bank of Delaware*, 2014 WL 554553, at *14 (N.D. Cal. Feb. 7, 2014) (requiring plaintiffs to create "subclasses with proper representatives for each" if they are "based on the laws of [different] states"). This provides yet another reason to strike Plaintiffs' common law claims as to the Nationwide Class with prejudice.

### C. Nationwide Common Law Claims Would Be *Per Se* Unmanageable.

Where, as here, the "laws of all fifty states apply, that alone would render [a] class unmanageable." *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1367 n.44 (11th Cir. 2002); *accord, e.g.*, *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir.) (affirming denial class certification where court would need to apply "the laws of forty-eight states"). For example, in *Mazza* the Ninth Circuit reversed the certification of a nationwide class where putative class members' claims would be governed by the law of the state where their individual transactions took place. 666 F.3d at 594. That made the class *per se* unmanageable. *Id.*; *see also, e.g.*, *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1104 (C.D. Cal. 2012) (denying certification); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653 (C.D. Cal. 1996) (same).

Accordingly, courts routinely strike nationwide class allegations at the pleading stage where, as here, the plaintiff asserts claims that would be adjudicated under the law of each class member's home state. *E.g.*, *Route v. Mead Johnson Nutrition Co.*,

2013 WL 658251, at *9 (C.D. Cal. Feb. 21, 2013) (striking nationwide class allegations before discovery involving common law breach of warranty claims); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946-7 (6th Cir. 2011) (affirming striking nationwide class allegations before discovery because "different laws would govern the class members' claims" and "any potential common issues of fact cannot overcome this problem"); *Rodriguez*, 2013 WL 3732883, at *3. Thus, in *Route*, the court struck a nationwide class like the one here asserting common law claims because the Ninth Circuit's decision in *Mazza* "forecloses, as a matter of law, the certification of any nationwide claim." 2013 WL 658251, at *7.

Here, Plaintiffs' proposed nationwide class includes people from every state who visited any of ten websites. As explained above (Part III.B), their common law claims will necessarily be governed by the law of their home states. These claims are *per se* unmanageable and, therefore, should be trimmed at the pleading stage. As the *Rodriguez* court observed when dismissing nationwide class claims with prejudice, "[i]t is one thing to apply California law to adjudicate the claims of a California class," but "[w]hen the claims are based on *state* law, as here, the law of fifty states is likely to apply … and it is unmanageable." 2013 WL 3732883, at *3 (emphasis original).

Indeed, the situation here is even worse than in *Route* or *Rodriguez*. Not only do the class members hail from all fifty states, Plaintiffs allege that those class members interacted with different clinics operated by different entities in eight different states. This means the case will present a dizzying number of cross-border permutations, such as Virginia residents who visited the websites of clinics in California; North Carolina residents who visited the website for the Tennessee clinic; Arizona residents who visited websites for Utah and Nevada clinics; patients of one clinic who visited the websites of clinics in other states, and so on. The need to conduct an "individualized choice of law analysis to each plaintiff's claims" compounds the manageability problems "exponentially." *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996), *aff'd sub nom. Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997).

Finally, even if these fifty-state claims were manageable (they are not), the need to apply the laws of so many states also precludes a finding that common questions predominate, as required for class certification under Rule 23(b)(3). *Woodard v. Labrada*, 2021 WL 4499184, at *40 (C.D. Cal. Aug. 31, 2021) ("Given that the differing laws of each state will apply to class members' claims, the Court finds that Plaintiffs fail to satisfy predominance as to their Proposed Nationwide Classes."); *Schwartz v. Lights of Am.*, 2012 WL 4497398, at *9 (C.D. Cal. Aug. 31, 2012) (similar). That provides yet another reason to strike Plaintiffs' common law claims as to the Nationwide Class. Accordingly, even if Plaintiffs' counsel could find 49 additional named plaintiffs with standing to bring common law claims under the laws of each state, the nationwide common law claims would still be unable to proceed as a class action because they are unmanageable and would present predominating individual issues, and, therefore, should be stricken.

**CONCLUSION**

No amount of discovery will cure the defects in Plaintiffs' Complaint. Accordingly, in the unlikely event that the case proceeds at all, the Court should: (1) limit both class definitions (Compl. ¶¶ 277 & 278) to persons with Facebook accounts who used the SDFC website; and (2) strike Plaintiffs' common law claims (Counts 5, 6, & 8) with respect to non-California residents.

Dated: June 12, 2024

*/s/ Brenda R. Sharton*
Brenda R. Sharton (*admitted pro hac vice*)
**DECHERT LLP**
One International Place, 40th Floor
100 Oliver Street
Boston, MA 02110-2605
Telephone: (617) 728-7100
Facsimile: (617) 275-8374
brenda.sharton@dechert.com

Benjamin M. Sadun (SBN 287533)
**DECHERT LLP**
US Bank Tower
633 West 5th Street, Suite 4900
Los Angeles, CA
Tel: (213) 808-5700
Fax: (213) 808-5760
benjamin.sadun@dechert.com

Theodore E. Yale (*admitted pro hac vice*)
**DECHERT LLP**
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Facsimile: (215) 655-2455
theoore.yale@dechert.com

*Attorneys for Defendants*